UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

− − − − − − − − − − − − − − − − − − − − − − − − − − − − − − − x

| | | |
|---|---|---|
| JOSEPH EBIN and YERUCHUM JENKINS, individually and on behalf of all others similarly situated, | : : : : | Docket No. 13-cv-2311 (JSR) |
| Plaintiffs, | : : | |
| -against- | : : | |
| KANGADIS FOOD, INC. d/b/a/ THE GOURMET FACTORY, | : : : | |
| Defendant. | : : | |

− − − − − − − − − − − − − − − − − − − − − − − − − − − − − − − x

---

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

---

FARRELL FRITZ, P.C.
*Attorneys for Defendant*
1320 RXR Plaza
Uniondale, New York 11556
(516) 227-0700

*Of Counsel:*

John P. McEntee
Michael A.H. Schoenberg

## TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ................................................................................. iii

**PRELIMINARY STATEMENT** ........................................................................ 1

**SUMMARY OF COMPLAINT ALLEGATIONS** ..................................... 3

     A.    Kangadis's Capatriti "100% Pure Olive Oil" ....................................... 3

     B.    Plaintiffs' Alleged Purchase of Capatriti ............................................ 4

     C.    Plaintiffs' Allegations Concerning Capatriti
          and the Fictitious Labeling Scheme ................................................... 4

          i.     *The U.S. Food and Drug Administration Has
                 Not Promulgated Regulations for Olive Oil* ............................... 5

          ii.    *The U.S. Department of Agriculture's Definitions
                 of Olive Oil Grades are Voluntary Guidelines* ........................... 6

          iii.   *The New York State Agriculture and Markets Law Does
                 Not Prohibit Labeling Olive-Pomace Oil as Olive Oil* ............................ 7

          iv.   *The International Olive Council is Not a Regulatory Body* ....................... 8

**ARGUMENT** .................................................................................................... 8

  Point I

     STANDARD OF REVIEW ............................................................................. 8

  Point II

     PLAINTIFFS' BREACH OF WARRANTY
     CLAIMS FAIL TO STATE A CLAIM FOR RELIEF
     BECAUSE CAPATRITI DID NOT CONTAIN ANY WARRANTY .............................. 9

          A.    Plaintiffs' MMW Act and Breach of Express
                Warranty Claims Fail to State a Cause of Action ...................................... 9

          B.    Plaintiffs' Breach of Implied
                 Warranty Claims Fail to State a Claim ..................................... 12

      C.     Plaintiffs' Breach of Express and Implied Warranty Claims
             Fail Because Plaintiffs are not in Privity with Kangadis ......................... 13

Point III

    PLAINTIFFS' CLAIM UNDER GBL § 349 (SIXTH CLAIM FOR RELIEF)
    AND NJSA § 56:8-1 (SEVENTH CLAIM FOR RELIEF) SHOULD BE
    DISMISSED BECAUSE PLAINTIFFS CANNOT ESTABLISH ACTUAL INJURY ...14

Point IV

    PLAINTIFFS FAIL TO PLEAD THEIR FRAUD CLAIM WITH PARTICULARITY..18

Point V

    PLAINTIFFS' FIFTH CAUSE OF ACTION FAILS
    TO STATE A CLAIM FOR UNJUST ENRICHMENT .....................................................20

Point VI

    ALL OF PLAINTIFFS' CLAIMS FAIL
    BECAUSE CAPATRITI CONTAINED OLIVE OIL ......................................................20

Point VII

    THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL
    JURISDICTION OVER ANY OF PLAINTIFFS' STATE LAW CLAIMS ....................22

Point VIII

    THE COURT LACKS SUBJECT MATTER JURISDICTION........................................23

**CONCLUSION** ......................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**F**EDERAL **C**ASES

*Abraham v. Volkswagen of America, Inc.,*
795 F.2d 238 (2d Cir. 1986)..................................................................................................14

*Acito v. IMCERA,*
47 F.3d 47 (2d Cir. 1995)......................................................................................................18

*Ackerman v. The Coca-Cola Co.,*
2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. 2010)..............................................................12, 13

*Anderson v. Bungee Int'l Mfg. Corp.,*
44 F. Supp. 2d 534 (S.D.N.Y. 1999)......................................................................................12

*Anderson v. Jamba Juice Co.,*
888 F. Supp. 2d 1000 (N.D. Cal. 2012) .................................................................................11

*Ashcroft v. Iqbal,*
129 S.Ct. 1937 (2009)................................................................................................8, 9, 16

*Astiana v. Dreyer's Grand Ice Cream, Inc.,*
2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012)......................................................10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 540 (2007)...............................................................................................................8

*Bristol Vill., Inc. v. Louisiana-Pacific Corp.,*
2012 U.S. Dist. LEXIS 183342 (W.D.N.Y. 2012) .................................................................13

*Burton v. Metropolitan Transp. Authority,*
244 F. Supp. 2d 252 (S.D.N.Y. 2003).....................................................................................23

*Chambers v. Time Warner, Inc.,*
282 F.3d 147 (2d Cir. 2002)....................................................................................................3

*Clark v. Paul Gray, Inc.,*
306 U.S. 583 (1939)..............................................................................................................24

*DeCastro v. AWACS, Inc.,*
935 F. Supp. 541 (D.N.J. 1996) ............................................................................................24

*Derbaremdiker v. Applebee's Int'l, Inc.,*
2012 U.S. Dist. LEXIS 138596 (E.D.N.Y. Sept. 26, 2012)...................................................15

*Dibartolo v. Abbott Labs.,*
2012 U.S. Dist. LEXIS 182326 (S.D.N.Y. 2012)...........................................................13, 14

iii

*Eternity Global Master Fund v. Morgan Guart. Trust of New York*,
    375 F.3d 168 (2d Cir. 2004)...........................................................................18

*Factory Assocs. & Exps. v. Lehigh Safety Shoe Co.*,
    2007 U.S. Dist. LEXIS 46290 (N.D.N.Y. 2007) .......................................12

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079 (1995).......................3, 16

*Gilman v. BHC Sec.*,
    104 F.3d 1418 (2d Cir. 1997)........................................................................24

*Giordano v. City of New York*,
    274 F.3d 740 (2d Cir. 2001).........................................................................23

*Hairston v. S. Beach Beverage Co.*,
    2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012) .................................10, 11

*Hoey v. Sony Electronics, Inc.*,
    515 F. Supp. 2d 1099 (N.D. Cal. 2007) ......................................................20

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
    166 F. Supp. 2d 740 (E.D.N.Y. 2001) .......................................................24

*In re Parmalat Sec. Litig.*,
    479 F. Supp. 2d 332 (S.D.N.Y. 2007).........................................................18

*Ivie v. Kraft Foods Global, Inc.*,
    2013 U.S. Dist. LEXIS 25615 (D. Cal. 2013) ............................................10

*Jones v. ConAgra Foods, Inc.*,
    2012 U.S. Dist. LEXIS 178352 (N.D. Cal. Dec. 17, 2012)..................................10

*Kelley v. Microsoft Corp.*,
    2007 U.S. Dist. LEXIS 66721 (W.D. Wash. Sept. 10, 2007)...................................11

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991).........................................................................3

*Leeds v. Meltz*,
    85 F.3d 51 (2d Cir. 1996)..............................................................................9

*Lerner v. Fleet Bank*,
    459 F.3d 273 (2d Cir. 2006)........................................................................18

*Leyse v. Domino's Pizza LLC*,
    2004 U.S. Dist. LEXIS 16869 (S.D.N.Y. Aug. 23, 2004)....................................24

*Liberty Mut. Ins. Co. v. WAWA Tours, Inc.*,
  2007 U.S. Dist. LEXIS 69104 (E.D.N.Y. Sept. 18, 2007)....................................20

*Markel Am. Ins. Co. v. Grimaldi*,
  2012 U.S. Dist. LEXIS 41184 (E.D.N.Y. Feb 10, 2012)...........................................3

*Roer v. Oxbridge Inc.*,
  198 F. Supp. 2d 212 (E.D.N.Y. 2001) ................................................................23

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)...............................................................................18

*Semitekol v. Monaco Coach Corp.*,
  582 F. Supp. 2d 1009 (N.D. Ill. 2008) ................................................................11

*Shaw v. Digital Equip. Corp.*,
  82 F.3d 1194 (1st Cir. 1996)..........................................................................18, 19

*Skelton v. Gen. Motors Corp.*,
  660 F.2d 311 (7th Cir. 1981) .........................................................................10, 11

*U.S. v. Antikamnia Chem. Co.*,
  231 U.S. 654 (1914)............................................................................................5

*U.S. v. Bedford Assocs.*,
  713 F.2d 895 (2d Cir. 1983)................................................................................20

*United Mine Workers v. Gibbs*,
  383 U.S. 715 (1966)...........................................................................................23

*Viscusi v. Proctor & Gamble*,
  2007 U.S. Dist. LEXIS 51307 (E.D.N.Y. July 16, 2007) .......................................12

*Walker v. Time Life Films, Inc.*,
  784 F.2d 44 (2d Cir. 1986), *cert. denied*, 476 U.S. 1159 (1986)............................23

*Zahn v. Int'l Paper Co.*,
  414 U.S. 291 (1973)...........................................................................................24

STATE CASES

*Arthur Jaffee Assocs. v. Bilsco Auto Serv.*,
  58 N.Y.2d 993 (1983) ........................................................................................14

*Baron v. Pfizer, Inc.*,
  42 A.D.3d 627 (3d Dept. 2007) ..........................................................................15

*Corsello v. Verizon New York, Inc.*,
  18 N.Y.3d 777 (2012).........................................................................................20

*Denny v. Ford Motor Co.*,
    87 N.Y.2d 248 (1995) ..................................................................................................12

*Donahue v. Ferolito, Vultaggio & Sons*,
    13 A.D. 3d 77 (1st Dept. 2004) ..............................................................12, 13, 15, 16

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
    192 N.J. 372 (2007) ....................................................................................................16

*Lazaroff v. Paraco Gas Corp.*,
    39 Misc. 3d 1217(A), 2011 N.Y. Misc. LEXIS 677 (Sup. Ct., Kings County 2011) ..............14

*Pronti v. DML of Elmira*,
    103 A.D.2d 916 (1st Dept. 1984) ...............................................................................13

*Scaringe v. Holstein*,
    103 A.D.2d 880 (3d Dept. 1984) ...............................................................................12

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) ......................................................................................15, 16, 20

### STATUTES RULES AND REGULATIONS

7 C.F.R. § 52.1531(c) ........................................................................................................21

7 C.F.R. § 52.1532 through 52.1535 ..................................................................................6

21 C.F.R. § 100 through 199 ..............................................................................................5

21 C.F.R. § 155.194 ............................................................................................................5

21 C.F.R. §152.126 .............................................................................................................5

21 Fed. Reg. 42,123 ............................................................................................................6

47 Fed. Reg. 42,123 (Sept. 24, 1982) .....................................................................5, 6, 22

15 U.S.C. § 2301, *et seq.*...........................................................................................9, 10, 11

15 U.S.C. § 2310(d) ...........................................................................................................9

21 U.S.C. § 301, *et seq.* (enacted June 25, 1938) ..............................................................5

21 U.S.C. § 331-336, 342-343 ...........................................................................................5

21 U.S.C. § 341 ...................................................................................................................5

21 U.S.C. § 371....................................................................................................................5

28 U.S.C. § 1332 .................................................................................................3, 24

28 U.S.C. § 1332(d)(2) ...............................................................................................23

28 U.S.C. § 1367 .........................................................................................................23

28 U.S.C. § 1367(c) ....................................................................................................22

F.R.C.P. Rule 9(b) ................................................................................................18, 19

F.R.C.P. Rule 12(b)(1) ...................................................................................................1

F.R.C.P. Rule 12(b)(6) ............................................................................................1, 22

N.J.S.A. § 56:8-2.11 ...................................................................................................24

N.J.S.A. § 56:8-1 ................................................................................................. 15, 16

NY Ag. & Mrkts L., § 204-a .....................................................................................7, 21

NY Ag. & Mrkts L., § 204-a (1)(a) through (d) ..............................................................7

NY General Business Law § 349 ..................................................................14, 15, 16

U.C.C. § 2-313(2) ........................................................................................................11

U.C.C. § 2-314(2)(c) ...................................................................................................12

U.C.C. § 2-315 ............................................................................................................12

## OTHER AUTHORITIES

18 Williston on Contracts § 52:76 (4th ed. 2009) .......................................................12

http://www.aboutoliveoil.org (last visited April 19, 2013) ...........................................4

http://www.internationaloliveoil.org/ estaticos/view/99-welcome-message (last visited
    March 18, 2013) ......................................................................................................8

http://www.internationaloliveoil.org/estaticos/view/103-list-of-ioc-members (last
    visited March 18, 2013) ..........................................................................................8

http://www.naooa.org/ (last visited April 19, 2013) .....................................................4

http://www.aboutoliveoil.org/regulations.html (last visited
    March 18, 2013) ......................................................................................................7

Defendant Kangadis Food, Inc., d/b/a The Gourmet Factory ("Kangadis"), respectfully submits this Memorandum of Law in support of its motion for an order, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), dismissing Plaintiffs' Complaint with prejudice.[1]

## PRELIMINARY STATEMENT

Plaintiffs Joseph Ebin ("Ebin") and Yeruchum Jenkins ("Jenkins") bring this putative class action claiming that Kangadis's Capatriti brand "100% Pure Olive Oil" contained a warranty of the contents of the tins Plaintiffs allegedly purchased.  From this, Plaintiffs assert a series of breach of express and implied warranty claims, asserted under both the Uniform Commercial Code and the Magnuson-Moss Warranty Act, on their allegation that Capatriti contained Olive-Pomace Oil instead of "olive oil."  Plaintiffs also allege related state law consumer deception and fraud claims based on the same allegations.  Plaintiffs' claims fail for several, independent reasons.

First, Plaintiffs' breach of express warranty claims under state law and the Magnuson-Moss Warranty Act fail to state a claim for relief because Capatriti's label did not (and does not) contain a warranty.  Rather, the "100% Pure Olive Oil" statement on the Capatriti label is a "product description" that does not offer any promise of performance or guarantee of refund. Further, Plaintiffs' state law claims for breach of implied warranties fail because Plaintiffs do not allege that Capatriti caused them physical harm or was unfit for its intended purpose.  Moreover, Plaintiffs cannot maintain their claims for alleged financial harm because they are not in privity with Kangadis.

Second, Plaintiffs fail to establish actual injury supporting their claims for violation of the New York and New Jersey consumer protection statutes.  Specifically, their allegations of

---

[1] A copy of the Complaint is attached as Exhibit "A" to the accompanying Declaration of Michael A.H. Schoenberg, Esq. ("Schoenberg Declr.").

financial damages are based on vague statements and "unwarranted deductions of fact" concerning competitor prices that may not be considered by the Court. Moreover, the allegation that Plaintiffs could have purchased Olive-Pomace Oil for less than what they paid for Capatriti is flatly contradicted by a nationwide study of Olive-Pomace Oil prices paid by consumers over the past year.

Third, Plaintiffs fail to plead their fraud claims with required particularity. For example, Plaintiffs do not allege when they purchased Capatriti, the Lot numbers for the tins of Capatriti they allegedly purchased, or even from whom they allegedly purchased Capatriti. Plaintiffs also do not allege how much they paid for Capatriti, as Ebin instead attempts to rely on an "approximation" of the amount while Jenkins makes no such necessary allegation. Finally, Plaintiffs do not adequately plead that they were actually injured by their purchase of Capatriti, as their claim of overpayment is based on conclusory allegations that are flatly contradicted by irrefutable documents.

Fourth, all of Plaintiffs' causes of action fail because Olive-Pomace Oil is, in fact, olive oil. Indeed, Plaintiffs' own allegations, and the documents relied upon by Plaintiffs in the Complaint, concede that Olive-Pomace Oil is derived only from olives. For this basic reason, Plaintiffs' claims based on a misrepresentation or breach of a warranty fail.

Fifth, if the Court is not inclined to dismiss the state law claims, then the Court should, alternatively, refuse to exercise its supplemental jurisdiction over those claims after it dismisses Plaintiffs' sole federal warranty claim. Plaintiffs' state law claims do not raise any "novel or complex" issue of state law, as they are run-of-the-mill common-law and U.C.C. consumer claims, and no exceptional circumstances exist here to justify the Court's retaining supplemental jurisdiction over them.

Finally, Plaintiffs' state law claims should be dismissed because the Court lacks the requisite subject matter jurisdiction over them, as none of the claims meets the mandatory minimum $75,000 threshold to establish diversity jurisdiction under 28 U.S.C. § 1332.

Accordingly, the Complaint fails to state claims upon which relief can be granted and, therefore, should be dismissed, with prejudice, in its entirety.

## SUMMARY OF COMPLAINT ALLEGATIONS

The following is a summary of the Complaint allegations.   For purposes of this motion, Defendant does not dispute the accuracy of the specific factual averments; however, the Court should reject the "conclusions of law or unwarranted deductions of fact" included in Plaintiffs' Complaint. *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079 (1995).  Further, when considering Kangadis's motion, the Court may consider not just the Complaint itself, but also "documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken." *Markel Am. Ins. Co. v. Grimaldi*, 2012 U.S. Dist. LEXIS 41184, *6-7 (E.D.N.Y. Feb 10, 2012) (quotations omitted); *see also Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002); *Kramer v. Time Warner Inc*., 937 F.2d 767, 774 (2d Cir. 1991) (noting that "courts routinely take judicial notice of documents filed in other courts").

### A.      Kangadis's Capatriti "100% Pure Olive Oil"

Kangadis is a family owned business engaged in importing and distributing fine ethnic foods, including olive oils.  *See* Complt., ¶ 10.  Since in or about 2006, Kangadis has developed its Capatriti brand under which it bottles, distributes, and sells varying grades of olive oils from different regions around the world.  *See id*.  Specifically, under the Capatriti brand, Kangadis sells a "100% Pure Olive Oil" product, which is referred to herein as "Capatriti."

3

**B.**     <u>Plaintiffs' Alleged Purchase of Capatriti</u>[2]

Ebin, a citizen of New York, alleges that he purchased a single 101-ounce tin of Capatriti from an unidentified "local grocery store" sometime in "late 2012." Complt., ¶ 8. Ebin alleges he paid "approximately $16.49" for that single tin of Capatriti. *Id*.

Jenkins, a citizen of New Jersey, alleges that he also purchased a single tin of Capatriti from an unidentified " local grocery store" sometime in "early 2013." *Id*., ¶. 9. Jenkins does not allege how much he paid for his tin of Capatriti. *Id*.

**C.**     <u>Plaintiffs' Allegations Concerning Capatriti and the Fictitious Labeling Scheme</u>

Plaintiffs allege that Capatriti's label warrants that it contains "100% pure olive oil." Complt., ¶¶ 8-9. Plaintiffs further allege that they relied upon that purported warranty when deciding to purchase Capatriti. *See id*. Plaintiffs then allege that Capatriti does not contain "100% pure olive oil," as stated on its label, but instead contains Olive-Pomace Oil. *See id*., ¶¶ 48-49. Based on this, Plaintiffs claim they were financial harmed in that they paid more for Capatriti based on its label than they otherwise would have for Olive-Pomace Oil. *See id*., ¶ 6. Notably, Plaintiffs do not allege they could have purchased Olive-Pomace Oil from the "grocery store" where they allegedly purchased Capatriti.

In an attempt to support their breach of warranty claims, Plaintiffs rely on various industry guidelines, and state and federal regulations concerning the labeling of olive oils. *See id*. ¶¶ 20-33. Plaintiffs also rely on a purported "expert" report of certain Capatriti tins *that were not purchased by Plaintiffs* but were instead tested at the behest of NAOOA. *See id*., ¶ 36-43.

---

[2] The North American Olive Oil Association ("NAOOA"), to whom Plaintiffs reference repeatedly in the Complaint but is not a party herein, is a trade association of marketers, packagers, and importers of olive oil for sale in the United States and Canada. *See* http://www.naooa.org/ (last visited April 19, 2013). According to its public website, NAOOA "is committed . . . to fostering a clear understanding of the different grades of olive oil; and to expounding the benefits of olive oil in nutrition, health, and the culinary arts." *Id*. NAOOA speaks regularly before Congress and other regulatory bodies on the varying grades of olive oil and their health benefits. *Id*.; *see also* About Olive Oil, located at http://www.aboutoliveoil.org (last visited April 19, 2013).

Neither the labeling rules or regulations, nor the purported "expert report" support Plaintiffs' allegations; they actually contradict them.

> i.    The U.S. Food and Drug Administration
> Has Not Promulgated Regulations for Olive Oil

In 1906, the United States Congress enacted the "Food and Drug Act," the forerunner to the Federal Food, Drug, and Cosmetic Act (the "FDC Act").  *See* 21 U.S.C. § 301, *et seq.* (enacted June 25, 1938).  The Supreme Court has identified the purpose of the FDC Act as to "secure the purity of food and drugs, *and to inform purchasers of what they are buying* . . . [i]ts provisions are directed to that purpose and must be construed to effect it."  *U.S. v. Antikamnia Chem. Co.*, 231 U.S. 654, 655 (1914).

The FDC Act grants the United States Food and Drug Administration ("FDA") authority to regulate the field of food safety and labeling.  21 U.S.C. § 371.  The FDA, for example, has the authority to promulgate food definitions and standards.  21 U.S.C. § 341.  The FDA is also delegated enforcement authority, including the authority to take various steps to enforce the FDC Act's ban on "adulterated" or "misbranded" food.  21 U.S.C. §§ 331-336, 342-343.  Section 341 of the FDC Act grants the FDA authority to establish identity standards for any food under its common or usual name.  21 U.S.C. § 341.[3]

Over the years the FDA has established identity standards for innumerable food products, from ketchup to frozen cherry pies.  *See, e.g.,* 21 C.F.R § 152.126 (establishing identity standards for ketchup); 21 C.F.R. 155.194 (same for frozen cherry pies); *see also, generally,* 21 C.F.R. 100 through 199.  The FDA, however, has never established identity standards for olive oil.  *See, e.g.,* 47 Fed. Reg. 42,123 (Sept. 24, 1982).

---

[3] "Whenever in the judgment of the Secretary such action will promote honesty and fair dealing in the interest of consumers, he shall promulgate regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity, a reasonable standard of quality, or reasonable standards of fill of container."  21 U.S.C. § 341.

That is not to say that the FDA has never considered the issue.  It has, and it found that there was no need for such standards.  *See id*.  Specifically, after receiving sixty-five comments on the issue, the FDA found that

> In view of the fact that no data were submitted to support the need for this standard [*i.e.*, relating to the labeling of varying grades of olive oils], FDA has concluded that *there is not sufficient need to warrant proposing a U.S. standard* at this time . . . .

21 Fed. Reg. 42,123 (emphasis added) (further finding that "solvent extraction is a standard procedure for removing oil from substances having low oil contents").  Schoenberg Declr., Ex. "C."

     ii.    *The U.S. Department of Agriculture's Definitions of Olive Oil Grades are Voluntary Guidelines*

In 2010, nearly three decades after the FDA's pronouncement, the United States Department of Agriculture ("USDA") – not the FDA, as the overseeing regulatory body – issued comprehensive definitions of the various grades of olive oil in its United States Standards for Grades of Olive Oil and Olive-Pomace Oil, effective October 24, 2010 (the "2010 Voluntary Standards").  *See* 7 C.F.R. § 52.1532 through 52.1535 (Schoenberg Declr., Ex. "D").

Despite Plaintiffs' contrary allegations, the 2010 Voluntary Standards are *not* requirements for the labeling of olive oil sold in the United States.  Indeed, the USDA states on the first page of the 2010 Voluntary Standards that they are "voluntary" guidelines available for use by those who wish to do so.  *See id*.  Moreover, in December 2011, Sebastian Cianci, an FDA spokesperson, gave an interview on the FDA's position on the enforcement of the 2010 Voluntary Standards.  *See* Schoenberg Declr., Ex. "E."  In that interview, Mr. Cianci reaffirmed that "the USDA standards are voluntary grade standards" and that the United States "*has not adopted [the terms used in the 2010 Voluntary Standards] as mandatory labeling requirements. . . .*"

6

NAOOA, on whom Plaintiffs so heavily rely, concedes this fact on its website, where it states that "The USDA defines a **voluntary standard** for companies that want USDA grading certification.  *See* About Olive Oil, Olive Oil Regulations & Standards Background in North America, http://www.aboutoliveoil.org/regulations.html (last visited March 18, 2013) (emphasis in original) (Schoenberg Declr., Ex. "G" ).  Indeed, NAOOA concedes that,

> [c]urrently, a <u>mandatory</u> standard of identity that defines what constitutes Extra Virgin Olive Oil, Olive Oil and Olive-Pomace Oil, ***does not exist in the United States***.

*Id.* (emphasis in original).  Further, in July 2012, NAOOA's Executive Vice President, Eryn A. Balch ("Balch") submitted a written petition to the FDA asking it to reconsider its "prior comments on the standard of identify for olive oil and olive-pomace oil."  *See* Schoenberg Declr., Ex. "F."  To date, the FDA has not accepted the NAOOA's invitation.

> iii.    *The New York State Agriculture and Markets Law*
>         <u>*Does Not Prohibit Labeling Olive-Pomace Oil as Olive Oil*</u>

In 2010, a few months before the USDA issued the 2010 Voluntary Standards, New York State enacted a law concerning the labeling of "Olive-oil mixtures" sold in New York.  *See* NY Ag. & Mrkts L., § 204-a (the "NY Law") (Schoenberg Declr., Ex. "H").  The NY Law, just like the 2010 Voluntary Standards, defines various grades of olive oil, including "Olive oil," "Olive-pomace oil," "Refined olive oil," and "Virgin olive oil."  *Id.*, § 204-a (1)(a) through (d). However, the NY Law, unlike the 2010 Voluntary Standards, also provides that

> It shall be unlawful for any person to . . . sell, offer for sale and/or expose for sale any *compound or blended oil* of any kind which purports to be an *olive oil mixture*, unless the container thereof be permanently and conspicuously labeled 'compound oil' or 'blended oil' with a statement of the *different ingredients thereof* . . . ."

*Id.* (emphasis added).  Notably, the New York Law does not specifically prohibit Olive-Pomace Oil from being labeled as "olive oil" when it is the *only* product in the container sold to

consumers.  Rather, it requires only that the components of "olive oil mixtures" be clearly labeled.  Capatriti was never an "olive oil mixture," however, as, at all relevant times prior to this action, it contained only Olive-Pomace Oil.  *See* Schoenberg Declr., Ex. "H."

>    iv.    *The International Olive Council is Not a Regulatory Body*

As Plaintiffs allege, the International Olive Council ("IOC") has also published certain definitions for the different grades of olive oil produced around the world.  *See* Complt., ¶¶ 29-33.  The IOC, however, is not a regulatory or enforcement agency.  Rather, it is merely an "organisation [sic] . . . bring[ing] together olive oil and table olive producing and consuming stakeholders" to provide a "forum for authoritative discussion on issues of interest to the olive industry."  *See* IOC, "The Institution," located at http://www.internationaloliveoil.org/ estaticos/view/99-welcome-message (last visited March 18, 2013).

Notably, the United States is *not* a member of the IOC.  *See* IOC, "List of IOC Members," located at http://www.internationaloliveoil.org/estaticos/view/103-list-of-ioc-members (last visited March 18, 2013).

## ARGUMENT

### Point I

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570 (2007)).  "Facial plausibility" is achieved when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 129 S. Ct. at 1949 (*citing Twombly,* 550 U.S. at 556).  However, "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal,* 129 S. Ct. at 1949-50.   As a general rule, the Court must read the facts alleged in the complaint in the light most favorable to the plaintiff, and accept those allegations as true.  *Id.* at 1949.   However, the Court need not accept as true "bald assertions" or conclusions of law.  *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir. 1996).

Using this measure, and accepting those factually-supported allegations in the Complaint as true, Plaintiffs have failed to state any claim for relief against Kangadis.

**Point II**

**PLAINTIFFS' BREACH OF WARRANTY CLAIMS FAIL TO STATE A
CLAIM FOR RELIEF BECAUSE CAPATRITI DID NOT CONTAIN ANY WARRANTY**

Plaintiffs allege in their First Cause of Action that Kangadis violated the Magnuson-Moss Warranty Act ("MMW Act") (15 U.S.C. §§ 2301, *et seq.*) because Capatriti's "100% Pure Olive Oil" label was false because Capatriti actually contained Olive-Pomace Oil.  *See* Complt., ¶¶ 66-67.  Plaintiffs then assert a series of related state law breach of warranty claims based on the same allegation.  *See* Complt., ¶ 72 (Second Claim for Breach of Express Warranty), ¶ 77 (Third Claim for Breach of Implied Warranty of Merchantability), and ¶¶ 87-89 (Fourth Claim for Breach of Implied Warranty of Fitness for a Particular Purpose).  Each of these claims fail to state a claim for relief because (i) Capatriti's label did not contain a warranty, (ii) Plaintiffs do not allege that Capatriti caused them any physical harm or was unfit for its intended purpose, and (iii) Plaintiffs are not in privity with Kangadis.

**A.      Plaintiffs' MMW Act and Breach of Express
Warranty Claims Fail to State a Cause of Action**

The MMW Act creates a federal private right of action for a warrantor's breach of a written warranty.  15 U.S.C. § 2310(d).  The MMW Act narrowly defines "written warranty" as:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship *and affirms or promises that such material or workmanship is **defect free*** or will meet a specified level of performance **over a specified period of time**, or
>
> (B) *any undertaking in writing* in connection with the sale by a supplier of a consumer product **to refund, repair, replace, or take other remedial action** with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking.

15 U.S.C. § 2301(6) (emphasis added).

The Courts that have addressed this issue have repeatedly found that food labels, such as the one at issue here, *do not* constitute warranties against a product defect. *See Ivie v. Kraft Foods Global, Inc.*, 2013 U.S. Dist. LEXIS 25615, 42-43 (D. Cal. 2013); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 U.S. Dist. LEXIS 101371, at *3 (N.D. Cal. July 20, 2012); *Jones v. ConAgra Foods, Inc.*, 2012 U.S. Dist. LEXIS 178352, *12-13 (N.D. Cal. Dec. 17, 2012). Rather, they have been found to be "'product descriptions' rather than promises that [the product is] defect-free, or guarantees of specific performance levels" over a specified time period. *Hairston v. S. Beach Beverage Co.*, 2012 U.S. Dist. LEXIS 74279, at *6 (C.D. Cal. May 18, 2012); *see also Skelton v. Gen. Motors Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981) ("A product information disclosure without a specified time period to which the disclosure relates is . . . not a written warranty.").

The Capatriti label fails to meet the definition of "written warranty" under the MMW Act because its label neither promises a defect-free product nor guarantees a level of performance over a specific time period. The challenged statement – "100% Pure Olive Oil" – therefore, is merely a "product description" rather than a promise that Capatriti is defect-free, or guarantees of specific performance levels. *See, e.g.*, *Hairston v. South Beach Bev. Co.*, 2012 U.S. Dist. LEXIS 74279, 16-20 (D. Cal. 2012) (finding statement on Lifewater bottle label that it is "all

natural with vitamins" is a non-actionable "product description"); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1003-04 (N.D. Cal. 2012) (finding phrase "all natural" is a non-actionable "product description").

Even if the statement on Capatriti was construed as a promise or guarantee of performance, it clearly does not "specify a level of performance *over a specified period of time*." 15 U.S.C. § 2301(6) (emphasis added).  Consequently, Plaintiffs have not stated, and they cannot state, a claim under the MMW Act.  *See, e.g., Skelton*, 660 F.2d at 316 n.7 (7th Cir. 1981) ("A product information disclosure without a specified time period to which the disclosure relates is . . . not a written warranty"); *Kelley v. Microsoft Corp.*, 2007 U.S. Dist. LEXIS 66721 (W.D. Wash. Sept. 10, 2007) (dismissing MMW Act claim because "Windows Vista Capable" stickers lack "temporal element" required to constitute a warranty).

Capatriti's label also fails to satisfy the definition of "written warranty" under Section 2301(6)(B) of the MMW Act because it does not promise refund, repair, or replacement if the product fails to meet specifications. *See Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1027-28 (N.D. Ill. 2008) (dismissing MMW Act claim where no promise of refund or repair); *Hairston*, 2012 U.S. Dist. LEXIS 74279, at *16-20 (same).

As plaintiffs do not allege the statements on Capatriti's label either (i) affirms that the product is "defect free," (ii) guarantees a level of performance over a specific time period, or (iii) promises refund, repair, or replacement, the Court must dismiss Plaintiffs' MMW Act and state-law breach of express warranty claims with prejudice.

Further, while no specific language or intention is necessary to create an express warranty, U.C.C. § 2-313(2) makes clear that statements of value or opinion alone do not create an express warranty.  For example, a seller's statement about the quality and health benefits of a

11

beverage is mere puffery that does not establish an express warranty.  *See Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D. 3d 77, 79 (1st Dept. 2004); *see also Scaringe v. Holstein*, 103 A.D.2d 880, 881 (3d Dept. 1984) (finding same concerning a seller's statement that a car is in "excellent condition"); *Anderson v. Bungee Int'l Mfg. Corp.*, 44 F. Supp. 2d 534, 541-42 (S.D.N.Y. 1999) (finding that statement that product was "Premium Quality" was a generalized statement and mere puffery).  That, however, is exactly what is alleged here about Capatriti's label.

Plaintiffs, therefore, fail to state a claim for breach of express warranty under the MMW Act or state law.

**B.**     **Plaintiffs' Breach of Implied Warranty Claims Fail to State a Claim**

Under the U.C.C., if a seller is a merchant, there is an implied contract that the goods will be of merchantable quality. *See Denny v. Ford Motor Co.*, 87 N.Y.2d 248 (1995) (citing U.C.C. § 2-314(2)(c)).  Similarly, an implied warranty of fitness for a particular purpose arises "[w]hen the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods.  *See Factory Assocs. & Exps. v. Lehigh Safety Shoe Co.*, 2007 U.S. Dist. LEXIS 46290, *29 (N.D.N.Y. 2007); *see also* U.C.C. § 2-315.

These implied warranties, however, "do not mean that the product will fulfill a 'buyer's every expectation' but rather simply 'provides for a minimum level of quality.'" *Viscusi v. Proctor & Gamble*, 2007 U.S. Dist. LEXIS 51307, at *13 (E.D.N.Y. July 16, 2007) (citing *Denny*, 87 N.Y.2d at 259); *see also* 18 Williston on Contracts § 52:76 (4th ed. 2009) (equating "merchantable" quality with "fitness for human use or consumption"). Thus, a claim for breach of implied warranty is properly dismissed where there is no allegation that the product caused any ill effect when used or was unfit for its intended purpose.  *See Ackerman v. The Coca-Cola*

*Co.*, 2010 U.S. Dist. LEXIS 73156, *96 (E.D.N.Y. 2010) (finding claim for breach of an implied warranty of fitness for a particular purpose should be dismissed because plaintiffs did not allege knowledge of a particular purpose); *Donahue*, 13 A.D.3d at 79 (affirming dismissal of breach of implied warranty claim where beverage was fit for human consumption and did not cause any ill effect).

Here, the Complaint is devoid of any allegation that Capatriti failed to constitute a merchantable product or could not be used for its intended purpose. *See, e.g.,* Complt., ¶¶ 87-88. Indeed, nowhere in the Complaint do Plaintiffs allege their "particular purpose" for purchasing Capatriti, that Kangadis knew of that particular purpose, and that Capatriti failed to meet that identified purpose. *See id*. Plaintiffs also make no allegation that Capatriti performed differently than any other Olive-Pomace Oil or, more importantly, that Capatriti caused adverse health effects when it was consumed. *See id*., at ¶¶ 8-9, 76-84.

*Indeed, Plaintiffs do not even allege they ever used or consumed Capatriti. See id*.

Plaintiffs, therefore, fail to state a claim for breach of implied warranty.

**C.     Plaintiffs' Breach of Express and Implied Warranty
Claims Fail Because Plaintiffs are not in Privity with Kangadis**

A claim for breach of warranty, whether express or implied, is also properly dismissed where there is no privity of contract between plaintiff and defendant. *See Donahue*, 13 A.D.3d at 79 (citing *Pronti v. DML of Elmira*, 103 A.D.2d 916, 917 (1st Dept 1984)); *see also Dibartolo v. Abbott Labs*., 2012 U.S. Dist. LEXIS 182326, *58-59 (S.D.N.Y. 2012) (finding "[p]rivity is normally 'an essential element of a cause of action for express warranty,'" unless plaintiff alleges personal injuries); *Bristol Vill., Inc. v. Louisiana-Pacific Corp*., 2012 U.S. Dist. LEXIS 183342 (W.D.N.Y. 2012) (finding that "under New York law '[a] claim based upon a breach of an implied warranty requires a showing of privity between the manufacturer and the plaintiff

when there is no claim for personal injuries'") (citations omitted); *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 249 (2d Cir. 1986) ("[t]o have a cause of action for breach of an implied warranty of fitness, therefore, privity must necessarily exist because the creation of the warranty requires a direct exchange between buyer and seller").

It is well-settled that "no implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged." *Lazaroff v. Paraco Gas Corp.*, 39 Misc. 3d 1217(A), 2011 N.Y. Misc. LEXIS 677, *20-21 (Sup. Ct., Kings County 2011) (citing *Arthur Jaffee Assocs. v. Bilsco Auto Serv.*, 58 N.Y.2d 993 (1983) and other cases) (dismissing breach of implied warranty claims because plaintiff did "not allege that he purchased . . . the propane cylinders by dealing directly with" defendants); *see also Dibartolo*, 2012 U.S. Dist. LEXIS 182326, *58-59.

Here, Plaintiffs allege only economic loss.  *See* Complt., ¶¶ 6-7, 84, 89 (alleging they overpaid for Capatriti and are seeking only a refund of their purchase price).  Plaintiff then fail to allege they were in privity with Kangadis.  To the contrary, Plaintiffs concede they are downstream purchasers of Capatriti.  *See* Complt., ¶¶ 8-9 (alleging Plaintiffs purchased Capatriti from their local grocery stores and not directly from Kangadis).  As Plaintiffs were not in privity with Kangadis, Plaintiffs' claims for breach of implied warranty fail.

### Point III

### PLAINTIFFS' CLAIM UNDER GBL § 349 (SIXTH CLAIM FOR RELIEF) AND NJSA § 56:8-1 (SEVENTH CLAIM FOR RELIEF) SHOULD BE DISMISSED BECAUSE PLAINTIFFS CANNOT ESTABLISH ACTUAL INJURY

Plaintiffs allege in their Sixth Claim for Relief under GBL § 349 that Kangadis "committed unfair or deceptive acts and practices by misrepresenting that Capatriti '100% Pure Olive Oil' was, in fact, 100% pure olive oil."  Complt., ¶ 98.  Plaintiffs also make the same

allegation in support of their Seventh Claim for Relief under N.J.S.A. § 56:8-1.  Complt., ¶ 105.  From this, Plaintiffs allege they were injured "because (a) they would not have purchased Capatriti . . ., and (b) they overpaid for Capatriti [] because it is sold at a price premium when compared to Pomace."  Complt., ¶¶ 101, 107  These allegations fail to state a claim for relief for two reasons.

First, a claim under GBL § 349 cannot use the alleged deception as both act and injury.  *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999) (dismissing GBL § 349 claims where plaintiffs sought "reimbursement of the purchase cost of cigarettes that they claim they would not have bought, but for defendants' fraudulent and deceptive practices," because this theory of harm "contain[ed] no manifestation of either pecuniary or 'actual' harm"); *Baron v. Pfizer, Inc.*, 42 A.D.3d 627 (3d Dept. 2007) (citing *Small* and dismissing GBL § 349 claim where plaintiff sought "a refund of the purchase price of [a prescription drug] on the ground that she would not have purchased the drug absent defendant's deceptive practices."); *see also Derbaremdiker v. Applebee's Int'l, Inc.*, 2012 U.S. Dist. LEXIS 138596, *23 (E.D.N.Y. Sept. 26, 2012) (dismissing GBL § 349 claim); *Donahue*, 13 A.D.3d at 78.  For example, in *Donahue*, the Court found that plaintiffs' claim that they were deceived into buying a beverage (*i.e.,* they would not have otherwise bought the beverage) based on the representations on the label failed to state a claim under GBL § 349 because that allegation "impermissibly set up the deception as both act and injury, a theory specifically rejected by our courts."  *Id*.  That, however, is exactly what Plaintiffs do in the Complaint by alleging they would not have purchased Capatriti "if they had known it was not, in fact, 100% pure olive oil."  Complt., ¶ 101.  For this reason, Plaintiffs' Sixth Claim for Relief should be dismissed with prejudice.

Second, Plaintiffs cannot demonstrate actionable damages, an essential element of thier GBL § 349 and N.J.S.A. § 56:8-1 claim (*Small,* 94 NY2d at 56 (1999)("proof that a material deceptive act or practice caused actual, although no necessarily pecuniary harm is required to impose compensatory damages")(internal citations omitted); *see also Donahue,* 13 AD3d at 77 (dismissing claims because plaintiffs "failed to establish any actual damages resulting from defendants' alleged deceptive practices"); *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.,* 192 N.J. 372, 389 (2007) (stating that a party asserting a claim under New Jersey's Consumer Fraud Act must establish (1) wrongful conduct; (2) *an ascertainable loss*; and (3) and a causal relationship or nexus between the wrongful conduct and the loss).

Although Plaintiffs allege they purchased Capatriti "at a price premium when compared to Pomace" (Complt., ¶¶ 6, 101), that allegation is a mere conclusory statement requiring an "unwarranted deduction of fact" and, thus, cannot support Plaintiffs' claim. *See Iqbal,* 129 S. Ct. at 1949-50; *First Nationwide Bank,* 27 F.3d at 771. Indeed, nowhere in the Complaint do Plaintiffs allege they actually purchased "Pomace" at a price lower than that charged for Capatriti, or that they even were offered an option at each of their unidentified "local grocery store[s]" to purchase a less-costly Olive-Pomace Oil product. The reason for Plaintiffs' omission is obvious – they cannot make such a claim.

Instead, Plaintiffs rely on a vague allegation concerning the cost of a "competing Pomace brand." *See* Complt., ¶ 6. Plaintiffs' allegation, however, fails to allege, for example, (i) specifically where such product can be purchased (*i.e.*, which stores, regions, and markets that also carry Capatriti), (ii) the product's retail price at the "local grocery store[s]" from where Plaintiffs purchased Capatriti, and (iii) the source of information for their allegation. And, leave to amend the Complaint to add these allegations (assuming Plaintiffs' could even do that) would

be futile, as documentary evidence flatly refutes Plaintiffs' allegation that they paid a "premium purchase price" for Capatriti.  *See* Complt., ¶ 6.  Indeed, a 52-week nationwide analysis of sales of Olive-Pomace Oil conducted by Acosta Sales and Marketing shows that Capatriti was (and is) sold at a price far lower than that for most Olive-Pomace Oil products:

| Olive Oil | Brand | AVG Price | AVG Price Per Fl. Oz. |
|---|---|---|---|
| CAPATRITI O-O PR TIN – 101 OZ | CAPATRITI | $9.36 | $0.092 |
| BOTTICELLI O-O PMC TIN – 101 OZ | BOTTICELLI | $11.79 | $0.117 |
| BELLOLIVA O-O X VRG PMC PL-101.5 OZ | BELLOLIVA | $10.98 | $0.108 |
| PAESINI O-O PMC TIN -128 OZ | PAESINI | $14.43 | $0.113 |
| LA RSA O-O PMC TIN-102 OZ | LA RUSSA | $15.14 | $0.148 |
| LA SQUISITA O-O PMC TIN -12 OZ | LA SQUISITA | $10.84 | $0.085 |
| ANTOLINA O-O PMC TIN -128 OZ | ANTOLINA | $17.33 | $0.135 |
| ORLANDO GRECO O-O PMC TIN -101.4 OZ | ORLANDO GRECO | $12.56 | $0.124 |
| COSTA D'ORO O-O PMC G -33.8 OZ | COSTA D'ORO | $5.49 | $0.162 |
| DI NICOLA O-O PMC TIN -101.4 OZ | DI NICOLA | $11.71 | $0.115 |
| ORTOLANO O-O PMC PL-128 OZ | ORTOLANO | $7.39 | $0.057 |
| GABRIELA O-O PMC G - 8.5 OZ | GABRIELA | $1.28 | $0.151 |
| CAPUTO O-O PMC TIN-128 OZ | CAPUTO | $16.14 | $0.126 |
| BOLIO O-O PMC PL- 8.5 OZ | BOLIO | $1.66 | $0.195 |
| LIRA O-O PMC TIN - 128 OZ | LIRA | $15.24 | $0.119 |
| RM-I O-O X VRG PMC TIN -101.4 OZ | ROMANO ITALIA | $8.99 | $0.087 |

*See* Schoenberg Declr., Ex. "K."

Plaintiffs also cannot allege that they paid more for Capatriti than they otherwise would have for "pure olive oil," as the NAOOA – on whose complaint Plaintiffs heavily rely – readily admits that Capatriti 101 ounce tins "sell[] for between $8.99 and $14.99; whereas tins of similarly labeled olive oil from NAOOA members sells for between $19.99 and $29.99."  *See* Schoenberg Declr., Ex. "J," at ¶ 33).  Thus, Plaintiffs paid less for Capatriti (*i.e.* Olive-Pomace Oil) than they would have for "Pure Olive Oil."  Simply stated, Plaintiffs have not, and cannot, allege any actual financial harm from their purchase of Capatriti.

Accordingly, their Sixth and Seventh Claims for Relief should be dismissed with prejudice.

**Point IV**

**<u>PLAINTIFFS FAIL TO PLEAD THEIR FRAUD CLAIM WITH PARTICULARITY</u>**

Rule 9(b) of the FRCP provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." F.R.C.P., R. 9(b).  To comply with Rule 9(b), a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004); *see also Lerner v. Fleet Bank*, 459 F.3d 273, 290 (2d Cir. 2006); *Eternity Global Master Fund v. Morgan Guart. Trust of New York*, 375 F.3d 168, 187 (2d Cir. 2004).

To satisfy the particularity requirements of Rule 9(b), "plaintiffs [also] must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA*, 47 F.3d 47, 52 (2d Cir. 1995); *see also Eternity Global Master Fund*, 375 F.3d at 187.  The requisite "strong inference may be drawn either (a) by alleging facts to show defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Acito*, 47 F.3d at 52. Claims of fraud cannot be based on "speculation and conclusory allegations." *Eternity Global Master Fund*, 375 F.3d at 187 (quoting *Acito*, 47 F.3d at 52).

The heightened pleading requirements of Rule 9(b) apply not only to formal averments of fraud, but also to allegations that sound in fraud, or where the "wording and imputations of the complaint are classically associated with fraud." *Rombach*, 355 F.3d at 171-72; *see also In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332, 340, n.30 (S.D.N.Y. 2007) (even though fraud is not a necessary element of negligent misrepresentation claim, because the plaintiffs' claim alleges intentional fraudulent misrepresentation, it is subject to Rule 9(b)); *Shaw v. Digital Equip. Corp.*,

82 F.3d 1194, 1223 (1st Cir. 1996) ("It is the allegation of fraud, not the title of the claim that brings the policy concerns underlying Rule 9(b) to the forefront.").

Here, Plaintiffs failed to meet their heighted pleading requirement for their Eighth (Negligent Misrepresentation) and Ninth (Fraud) Claims for Relief. Specifically, the Complaint is devoid of any allegation that would give rise to an inference of scienter, as there are no applicable rules or regulations concerning the labeling of Capatriti. Kangadis, therefore, could not have consciously or recklessly mislabeled Capatriti.

Further, Plaintiffs fail to allege with any level of particularity when and from whom they purchased Capatriti, or the Lot numbers for the tins of Capatriti they allegedly purchased. *See* Complt., ¶¶ 8-9. Instead, Plaintiffs offer only vague and unsubstantiated allegations that they purchased Capatriti "in late 2012" or "early 2013" from "a local grocery store." *Id*. Plaintiffs also do not allege with particularity how much they paid for Capatriti, as Ebin instead attempts to rely on an "approximation" of such amount while Jenkins makes no such necessary allegation. The Complaint also is devoid of any allegation as to why Plaintiffs chose to purchase Capatriti (as opposed to any other brand of olive oil), thereby undermining any allegation of reliance necessary for Plaintiffs' claims.

Finally, Plaintiffs do not adequately plead that they were actually injured by their purchase of Capatriti. Although Plaintiffs allege generally that they "overpaid" for Capatriti,[4] they fail to offer any particular allegations to support such a claim. For example, Plaintiffs do not allege the cost of "Olive Pomace Oil" products that were sold in the "grocery stores" from which they purchased Capatriti and at the time they purchased Capatriti. *See* Complt., ¶¶ 6, 8-9. Further, any such allegation is completely refuted by the Acosta Sales and Marketing data

---

[4]  Again, Plaintiffs do not allege that they suffered any physical harm by consuming Capatriti or, notably, that they even consumed Capatriti at all.

showing that Capatriti is sold for *less* than other Olive-Pomace Oil products sold throughout the United States. *See* Schoenberg Decl., Ex. "K."

These types of conclusory allegations are insufficient to sustain a consumer protection claim based on fraud. *See, e.g., Liberty Mut. Ins. Co. v. WAWA Tours, Inc.*, 2007 U.S. Dist. LEXIS 69104, *22-23 (E.D.N.Y. Sept. 18, 2007) (dismissing fraud claim because plaintiff's conclusory allegations did not give rise to a "strong inference of fraudulent intent."); *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (finding proof that "material deceptive act" caused "actual harm" is required). Plaintiffs' fraud-based claims should, therefore, be dismissed.

**Point V**

**PLAINTIFFS' FIFTH CAUSE OF ACTION FAILS
TO STATE A CLAIM FOR UNJUST ENRICHMENT**

Unjust enrichment "is an equitable remedy" that "prevents one party from retaining, at the expense of another, a benefit to which he is not entitled." *U.S. v. Bedford Assocs.*, 713 F.2d 895, 902-03 (2d Cir. 1983). An unjust enrichment claim is unavailable "where it simply duplicates, or replaces, a conventional contract or tort claim. *See Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012) ("unjust enrichment is not a catchall cause of action to be used when others fail"). Here, Plaintiffs unjust enrichment claim is derivative of the other claims asserted by them. *See Hoey v. Sony Electronics, Inc.*, 515 F. Supp. 2d 1099, 1106 (N.D. Cal. 2007). Accordingly, Plaintiffs' unjust enrichment claim should be dismissed.

**Point VI**

**ALL OF PLAINTIFFS' CLAIMS FAIL
BECAUSE CAPATRITI CONTAINED OLIVE OIL**

The unifying and critical allegation for Plaintiffs' nine causes of action is that Capatriti, when it was purchased by Plaintiffs, did not contain "100% Pure Olive Oil," as represented on

the label, but instead contained "Olive-Pomace Oil".  *See* Complt., ¶¶ 1, 67, 73, 78, 87, 94, 98, 106, 111, and 119.  *Olive*-Pomace *Oil* is "olive oil," though.  Consequently, all of Plaintiffs' claims fail to state a cause of action.

There can be no dispute that Olive-Pomace Oil is oil derived from olives.  Both the U.S.D.A. and the New York Legislature define "Olive-Pomace Oil" as "the oil obtained by treating olive pomace (the product remaining after the mechanical extraction of olive oil) . . . ." 7 C.F.R. § 52.1531(c); *see also* NY Agr. & Mrkts L., § 204-a.  Moreover, as NAOOA's Executive Vice-President, Eryn Balch, recently testified before the U.S. International Trade Commission,

> NAOOA's member companies import all *types of olive oil* consumed in the United States.  These imports fall into three types [of olive oil] recognized by the International Olive Council, or "IOC" – extra virgin, olive oil, and *olive-pomace oil*.  While characterized by different chemical criteria and production methods, ***all three of these types are made only from olives*** and contain the same proportion of healthy monosaturated fats . . . . all grades of olive oil are a healthful choice.

*See* Schoenberg Declr., Ex. "B," at p. 2 (emphasis added).  Even the "expert" Professor Conte, on whose report Plaintiffs so heavily rely (*see* Complt., ¶¶ 36-43), admits, as he must, that "Olive oil is found . . . *in the seeds and in the fruit skin*" of the olive.  Schoenberg Declr., Ex. "I," at Point II.A.10, at p. 2 (emphasis added); *see also id.*, Point II.C.20, at p. 4 (noting that "Pomace . . . contain[s] a small amount of oil.").

Plaintiffs' own allegations confirm that Olive-Pomace Oil is "olive oil;" *to wit.,* "Pomace is . . . extracted from leftover olive skins and pits" (Complt., ¶ 2); "it [Olive-Pomace Oil] comes from olives" (*id.*); "olive oil comes from the fruit of the olive tree" (*i.e.* olives, including their skins and pits) (*id.*, ¶ 14); and "Solvent extraction of oil from olives is used to remove the residual oil from the pomace" (*id.*, ¶ 19 (quoting 47 Fed. Reg. 42123)).

Plaintiffs attempt to distract the Court from this fact by alleging that the labeling of

Olive-Pomace Oil as "olive oil" violates "an array of . . . industry practices, international regulations, and federal and state laws." Complt., ¶¶ 3, 20-30. That, however, is simply not true.

There is no federal regulation concerning the labeling of olive oils and NAOOA admits this on its website. Moreover, the FDA has taken no action on the issue (*see* 47 Fed. Reg. 42,123) and the USDA's standards are merely voluntary guidelines used for participation in the USDA's certification program. *See* 2010 Voluntary Standards. Further, the NY Law does not apply to Capatriti because Capatriti was not, and is not, an "olive-oil mixture." Thus, Plaintiffs' reliance on such fictitious "regulations" is misplaced, is misleading to the Court, and cannot support any of their claims.

As Olive-Pomace Oil is "olive oil," Capatriti's label was true. Consequently, Kangadis did not breach any perceived warranty, express or implied, or make any material misrepresentation or omissions of fact. All of Plaintiffs' nine causes of action, therefore, fail to state a claim and should be dismissed with prejudice.

### Point VII

### THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER ANY OF PLAINTIFFS' STATE LAW CLAIMS

All of Plaintiffs' state law claims should be dismissed pursuant to F.R.C.P. Rule 12(b)(6). If, however, the Court is not inclined to dismiss Plaintiffs' state law claims on that basis, then it should, alternatively, decline to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c).[5]

---

[5] 28 U.S.C. § 1367(c), provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

The dismissal of Plaintiffs' sole federal claim under the MMW Act removes the basis for this Court's jurisdiction over Plaintiffs' remaining state law claims.  *See* 28 U.S.C. § 1367*; Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726-27 (1966)); *Burton v. Metropolitan Transp. Authority*, 244 F. Supp. 2d 252 (S.D.N.Y. 2003) (refusing to exercise supplemental jurisdiction and dismissing state and city law discrimination claims, because they are best left to the courts of the State of New York); *Roer v. Oxbridge Inc.*, 198 F. Supp. 2d 212, 232 (E.D.N.Y. 2001) (declining to exercise jurisdiction over state-law claims).  Moreover, the remaining state law claims do not raise any "novel or complex" issue of State law, as they are run-of-the-mill common-law and U.C.C. consumer claims.  Finally, no exceptional circumstances exist here to justify the Court's retaining supplemental jurisdiction over the remaining state law claims. *C.f. Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986), *cert. denied*, 476 U.S. 1159 (1986) (finding exceptional circumstances existed where state-law claims had substantial overlapping issues with remaining federal infringement claims).

Absent a viable federal claim (*i.e.,* the MMW Act claim), the Court should decline, at this early stage of the action, to exercise supplemental jurisdiction over Plaintiffs' state law claims inasmuch as "state issues substantially predominate" in those claims.

**Point VIII**

**THE COURT LACKS SUBJECT MATTER JURISDICTION**

Plaintiffs allege that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  *See* Complt., ¶ 12.  Plaintiffs are wrong because their claims do not satisfy the jurisdictional minimum for a district court to have jurisdiction over the class.

It is a long-standing principle that each and every class member's claim must satisfy the

jurisdictional minimum of $75,000 for a district court to have jurisdiction over the class, and that class claims may not be aggregated to satisfy the amount in controversy.  *See Zahn v. Int'l Paper Co.*, 414 U.S. 291, 312 (1973); *see also Clark v. Paul Gray, Inc*., 306 U.S. 583, 590 (1939) (preventing aggregation of several plaintiffs' claims for the purpose of satisfying the amount in controversy); *Gilman v. BHC Sec.,* 104 F.3d 1418, 1422 (2d Cir. 1997) ("each of several plaintiffs asserting separate and distinct claims must satisfy the jurisdictional-amount requirement if his claim is to survive a motion to dismiss"); *Leyse v. Domino's Pizza LLC*, 2004 U.S. Dist. LEXIS 16869, *6-7 (S.D.N.Y. Aug. 23, 2004) (dismissing class-action complaint where plaintiffs did not satisfy minimum claim amount for diversity jurisdiction); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F. Supp. 2d 740, 753 (E.D.N.Y. 2001); *DeCastro v. AWACS, Inc.,* 935 F. Supp. 541, 546 (D.N.J. 1996).

Here, the claims asserted by Jenkins, a New Jersey resident, fall far-below the jurisdictional requirement of 28 U.S.C. § 1332.  Specifically, accepting the allegations in the Complaint as true, pursuant to the New Jersey Consumer Fraud Act the most Jenkins could recover against Kangadis is less than $16.49, or "a refund of all moneys" acquired by Kangadis. N.J.S.A. § 56:8-2.11; *see also* Complt., ¶ 6; *but see* Complt., ¶ 9 (failing to allege the price actually paid by Jenkins for the single tin of Capatriti he allegedly purchased).

Jenkins, therefore, fails to allege facts supporting subject matter jurisdiction over his claims.  Consequently, his state law claims should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Kangadis respectfully requests that the Court grant its motion and dismiss the Complaint in its entirety, with prejudice, together with such other and further relief as the Court deems just, equitable and proper.

Dated:  May 3, 2013

Respectfully submitted,

FARRELL FRITZ, P.C.
*Attorneys for Defendant*

By: _____

John P. McEntee
Michael A.H. Schoenberg
1320 RXR Plaza
Uniondale, New York 11556
(516) 227-0700

Interwoven\2972665.1