**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH EBIN and YERUCHUM JENKINS, individually and on behalf of all others similarly situated, <br><br>                          Plaintiffs, <br><br>      v. <br><br> KANGADIS FOOD INC., d/b/a THE GOURMET FACTORY <br><br>                        Defendant. | Civil Action No. 13-CV-2311 (JSR) |

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

Dated:  May 17, 2013

**BURSOR & FISHER, P.A.**

Scott A. Bursor (SB1141)
Joseph I. Marchese (JM1976)
Neal J. Deckant (ND1984)
888 Seventh Ave
New York, NY 10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
       jmarchese@bursor.com
       ndeckant@bursor.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.      APPLICABLE LEGAL STANDARD ........................................................... 2

II.     THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS
        CASE ....................................................................................................... 3

III.    CAPATRITI "100% PURE OLIVE OIL" IS ILLEGALLY
        MISLABELED AS OLIVE OIL ................................................................... 4

IV.     PLAINTIFFS SUFFICIENTIY PLEAD CLAIMS FOR BREACH OF
        WARRANTIES .......................................................................................... 6

        A.      Defendant's Product Representations Are Verifiable Statements Of Fact, Not
                Mere Puffery ............................................................................... 6

        B.      Plaintiffs' MMWA Claim Stands With Their State Warranty Claims ................. 10

        C.      Defendant's Representations That Its Product Is "100% Pure Olive Oil"
                Constitute Written Warranties Under The MMWA .............................................. 10

        D.      Plaintiffs Sufficiently State Claims For Breach Of Implied Warranties.............. 13

        E.      Plaintiffs' Breach Of Warranty Claims Do Not Require Privity Of Contract ...... 15

V.      PLAINTIFFS SUFFICIENTLY PLEAD CLAIMS UNDER GBL § 349
        AND THE NJCFA .................................................................................... 18

VI.     PLAINTIFFS SUFFICIENTLY PLEAD A CLAIM FOR FRAUD ............................... 21

VII.    PLAINTIFFS SUFFICIENTLY PLEAD A CLAIM FOR UNJUST
        ENRICHMENT ....................................................................................... 24

VIII.   LEAVE TO AMEND ................................................................................. 25

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Ackerman v. Coca-Cola Co.*,
  2010 WL 2925955 (E.D.N.Y. Feb. 6, 2012) ................................................ 19

*Addeo v. Metropolitan Bottling Co.*,
  39 Misc.2d 474 (1st Dep't 1963) .................................................................. 17

*Alloway v. Gen. Marine Indus.*,
  149 N.J. 620 (1997) ...................................................................................... 16

*Anderson v. Jamba Juice Co.*,
  888 F. Supp. 2d 1000 (N.D. Cal. 2012) ....................................................... 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................... 3

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
  2012 WL 2990766 (N.D. Cal. Jul. 20, 2012) ............................................... 12

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) .......................................................................... 22

*Baron v. Pfizer, Inc.*,
  42 A.D.3d 627 (3d Dep't 2007) .................................................................... 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................... 2

*Bitter v. Renzo*,
  2012 WL 7856951 (N.Y. Sup. Apr. 12, 2012) ............................................. 25

*Blockbuster, Inc. v. Galeno*,
  472 F.3d 53 (2d Cir. 2006) ............................................................................ 3

*Cali v. Chrysler Group LLC*,
  2011 WL 383952 (S.D.N.Y. Jan. 18, 2011) ................................................. 10

*Carcone v. Gordon Heatin & Air Conditioning Co.*,
  212 A.D.2d 1017 (4th Dep't 1995) .............................................................. 17

*Clark v. Paul Gray, Inc.*,
  306 U.S. 583 (1939) ....................................................................................... 4

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ..................................................................... 10

*DeCastro v. AWACS, Inc.*,
  935 F. Supp. 541 (D.N.J. 1996) ..................................................................... 4

*Derbaremdiker v. Applebees's Int'l, Inc.*,
  2012 WL 4482057 (E.D.N.Y. September 26, 2012) ............................................................. 19

*Dibartolo v. Abbott Labs.*,
  2012 WL 6681704 (Dec. 21, 2012) ..................................................................................... 17

*Donahue v. Ferolito Vultaggio & Sons*,
  13 A.D. 3d 77 (1st Dep't 2004) ..................................................................................... 10, 19

*Gilman v. BHC Sec.*,
  104 F.3d 1418 (2d Cir. 1997) ............................................................................................... 4

*Hairston v. S. Beach Beverage Co.*,
  2012 WL 1893818 (C.D. Cal. May 18 2012) ...................................................................... 12

*Hecke v. Clear Channel Commc'n*,
  2005 WL 975837 (S.D.N.Y. Apr. 27, 2005) ......................................................................... 6

Henry v. Rehab Plus Inc.,
  404 F. Supp. 2d 435 (E.D.N.Y. 2005) ................................................................................. 14

*Heredia v. U.S.*,
  887 F. Supp. 77 (S.D.N.Y. 2007) ........................................................................................ 18

*Hsueh v. The Bank of N.Y.*,
  2006 WL 2778858 (S.D.N.Y. Sept. 26, 2006) .................................................................... 20

*Humphrey v. Diamant Boart, Inc.*,
  556 F. Supp. 2d 167 (E.D.N.Y. 2008) ................................................................................. 13

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
  166 F. Supp. 2d 740 (E.D.N.Y. 2001) .................................................................................. 4

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006) ............................................................................................... 23

Isip v. Mercedes-Benz USA, LLC,
  155 Cal. App. 4th 19 (2007) ............................................................................................... 15

*Ivie v. Kraft Foods Global, Inc.*,
  2013 U.S. Dist. LEXIS 25615 (N.D. Cal. Feb 25, 2013) .................................................... 12

*Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA),
  2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010) ..................................................... 21

*Jones v. ConAgra Foods, Inc.*,
  2012 WL 6569393 (N.D. Cal. Dec. 17, 2012) .................................................................... 12

*Keegan v. Am. Honda Motor Co., Inc.*,
  2012 WL 75443 (C.D. Cal. Jan. 6, 2012) ........................................................................... 15

*Kelley v. Microsoft Corp.*,
  2007 WL 2600841 (W.D. Wash. Sept. 10, 2007) ............................................................... 12

*Leyse v. Domino's Pizza LLC*,
　　2004 U.S. Dist. LEXIS 16869 (S.D.N.Y. Aug. 23, 2004) ........................................................ 4

*Liberty Mur. Ins. Co. v. WAWA Tours, Inc.*,
　　2007 WL 2743500 (E.D.N.Y. Sept. 18, 2007) ........................................................ 23

*Lipton v. Nature Co.*,
　　71 F.3d 464 (2d Cir. 1995) ........................................................ 9

*Luce v. Edelstein*,
　　802 F.2d 49 (2d Cir. 1986) ........................................................ 25

*Marache v. Akzo Nobel Coatings, Inc.*,
　　2010 WL 908467 (S.D.N.Y. Mar. 12, 2010) ........................................................ 13

*McDonnell Douglas Corp. v. Thiokol Corp.*,
　　124 F.3d 1173 (9th Cir. 1997) ........................................................ 11

*McDonough v. Bayer Healthcare, LLC*,
　　2011 WL 2119107 (D.N.J. May 26, 2011) ........................................................ 16

*Montich v. Miele USA, Inc.*,
　　849 F. Supp. 2d 439 (D.N.J. 2012) ........................................................ 16

*Murrin v. Ford Motor Co.*,
　　303 A.D.2d 475 (2d Dep't 2003) ........................................................ 17

*Nartron Corp. v. Hamilton/Avnet Elecs. of Arizona, Inc.*, No. 5:90-CV-60,
　　1991 U.S. Dist. LEXIS 19238 (W.D. Mich. Nov. 1, 1991) ........................................................ 17

*Niagara Mohawk Power Corp. v Freed*,
　　265 A.D.2d 938 (N.Y. App. Div. 1999) ........................................................ 25

*Oliver Schools, Inc. v. Foley*,
　　930 F.2d 248 (2d Cir. 1991) ........................................................ 25

*Paramount Aviation Corp. v. Agusta*,
　　288 F.3d 67 (3d Cir. 2002) ........................................................ 16, 17

*Pramer, S.C.A. v. Abaplus Int'l Corp.*,
　　76 A.D.3d 89 (N.Y. App. Div. 2010) ........................................................ 24

*Rachlin v. Libbey-Owens-Ford Glass Co.*,
　　96 F.2d 597 (2d Cir. 1938) ........................................................ 17

*Randy Knitwear v. Am. Cyanamid Co.*,
　　11 N.Y.2d 5 (N.Y. 1962) ........................................................ 16, 17

*Ronzani v. Sanofi S.A.*,
　　899 F.2d 195 (2d Cir. 1990) ........................................................ 25

*Roth v. Jennings*,
　　489 F.3d 499 (2d Cir. 2007) ........................................................ 2

iv

*Saratoga Spa & Bath v. Beeche Sys. Corp.*,
    230 A.D.2d 326 (3d Dep't 1997)............................................................. 14

*Scaringe v. Holstein*,
    103 A.D.2d 880 (3d Dep't 1984)............................................................. 10

*Skelton v. Gen Motors Corp.*,
    660 F.2d 311 (7th Cir. 1981) ................................................................. 12

*Slotkin v Citizens Cas. Co. of New York*,
    614 F. 2d 301 (2d Cir. 1979) ................................................................. 18

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999)............................................................................... 19

*Speedmark Transportation, Inc. v. MUI*,
    778 F. Supp. 2d 439 (S.D.N.Y. 2011) .................................................... 20

*Stern v. Leucadia Nat. Corp.*,
    844 F.2d 997 (2d Cir. 1988) .................................................................. 23

*Thompson Farms, Inc. v. Corno Feed Prods., Div. of Nat'l Oats Co.*,
    173 Ind. App. 682 (Ind. Ct. App. 1977) ............................................... 18

*Time Warner Cable, Inc. v. Directv, Inc.*,
    497 F.3d 144 (2d Cir. 2007) .................................................................. 9

*U.S. ex rel. Polansky v. Pfizer, Inc.*,
    2009 WL 1456582 (E.D.N.Y. May 22, 2009)........................................ 23

*Vess v. Ciba-Geigy Corp.*,
    217 F.3d 1097 (9th Cir. 2003) ............................................................... 21

*Walsh v. Ford Motor Co.*,
    807 F.2d 1000 (D.C. Cir. 1986)............................................................. 10

*Watson v. Consol. Edison of N.Y.*,
    594 F. Supp. 2d 399 (S.D.N.Y. 2009) ................................................... 21

*Wick v. Wabash Holding Corp.*,
    801 F. Supp. 2d 93 (W.D.N.Y. 2011)..................................................... 16

*Wojcik v. Empire Forklift, Inc.*,
    14 A.D.3d 63 (3d Dep't 2004)................................................................ 13

Yoder v. Orthomolecular Nutrition Inst., Inc.,
    751 F.2d 555 (2d Cir. 1985) .................................................................. 22

*Zahn v. Int'l Paper Co.*,
    414 U.S. 291 (1973) ............................................................................... 4

**STATUTES**

15 U.S.C. § 2301(6) (A) ............................................................................................ 11

15 U.S.C. § 2310(6) .................................................................................................... 11

28 U.S.C. § 1332(d) .................................................................................................. 3, 4

Commercial Code § 2-314(1) .................................................................................... 13

N.J. Stat. § 12A:2–101 .............................................................................................. 16

N.J.S.A. § 12A:2-313 ................................................................................................... 7

N.Y. U.C.C. § 2-314(1) .............................................................................................. 13

N.Y. U.C.C. § 2-318 .................................................................................................. 17

N.Y. U.C.C. 2-313 ........................................................................................................ 7

NY Agric. & Mkts. Law § 204-a .................................................................................. 5

**RULES**

Fed. R. Civ. P. 15(a) ................................................................................................. 25

Fed. R. Civ. P. 8(a) ................................................................................................. 2, 24

Fed. R. Civ. P. 9(b) ................................................................................. 21, 22, 23, 25

**REGULATIONS**

47 Fed. Reg. 42123 (Sept. 24, 1982) .......................................................................... 5

N.Y. Comp. Codes R. & Regs. tit. 1, § 269.1 ............................................................. 5

**INTRODUCTION**

In its motion to dismiss, Defendant makes the same arguments that this Court rejected less than a month ago in *North Am. Olive Oil Ass'n v. Kangadis Food Inc.*, *d/b/a The Gourmet Factory,* No. 13-cv-0868 (S.D.N.Y. Apr. 25, 2013) (Rakoff, J.) [hereinafter *NAOOA*], a related case brought under the same facts.  But these arguments are no more persuasive today than they were last month.  *Id.* [Dkt. 30] (Opinion And Order) (granting plaintiff's motion for a preliminary injunction and enjoining Defendant Kangadis Food Inc. "(1) from selling as '100% Pure Olive Oil' any product containing Pomace, and (2) from selling any product containing Pomace without expressly labeling it as such"); Marchese Decl. Exh. A.

For example, Defendant argues that "Olive-Pomace Oil is 'olive oil'" and that it does not violate federal and state laws and industry standards.  *See* Defendant's Memorandum Of Law In Support Of Its Motion To Dismiss The Complaint ("Def's Br.") at 5-8, 21-22 [Dkt. 11].  But the Court has already held that "a number of state, federal, and industry labeling standards … distinguish between olive oil and Pomace, and require the latter to be labeled as such," and that "[w]hile Pomace may in some sense be 'olive oil' in that it is an oil derived from olives, it is not remotely what the ordinary consumer understands 'olive oil' to be."  *NAOOA* [Dkt. 30] at 16-17; Marchese Decl. Exh. A.

Defendant also contends that the promise "100% Pure Olive Oil" is "mere puffery."  Def's Br. at 12.  But the Court has already found that "100% Pure Olive Oil" is "literally false." *NAOOA* [Dkt. 30] at 17; Marchese Decl. Exh. A.

Defendant's remaining arguments fare no better.  For example, Defendant argues that Plaintiffs do not sufficiently state claims for breach of the implied warranties because Plaintiffs "make no allegation that Capatriti performed differently than any other Olive-Pomace Oil."  Def's Br. at 13.  But this misses the point.  Capatriti "100% Pure Olive Oil" was not marketed,

sold, and warranted as "Olive Pomace Oil."  To the contrary, it was marketed, sold, and

warranted as "100% Pure Olive Oil" – which is what Plaintiffs expected to receive but did not

get.

Defendant then argues that Plaintiffs do not allege "actionable damages."  Def's Br. at

16-17, 19-20.  But, among other things, Plaintiffs allege that they would not have bought

Capatriti "100% Pure Olive Oil" if they knew that it was Pomace.  Compl. ¶¶ 8-9.  Plaintiffs also

allege that Capatriti "100% Pure Olive Oil" commands "a substantial price premium over other

Pomace products," and Plaintiffs' complaint even includes a graph showing a "67% price

premium, per fluid ounce over a competing Pomace brand."  *Id.* ¶ 6.

## ARGUMENT

### I.   APPLICABLE LEGAL STANDARD

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must

"accept the complaint's factual allegations, and all reasonable inferences that can be drawn from

those allegations in the plaintiff's favor, as true."  *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir.

2007).  The notice pleading standard of the Federal Rules of Civil Procedure "requires only 'a

short and plain statement of the claim showing that the pleader is entitled to relief,' in order to

give the defendant fair notice of what the . . . claim is and the ground upon which it rests." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)).  In fact, "the

pleading of additional evidence, beyond what is required to enable the defendant to respond, is

not only unnecessary, but in contravention of proper pleading procedure."  *Roth*, 489 F.3d at 512

(internal quotations and alteration omitted).  At this stage, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Twombly*, 550 U.S. at 556).

## II. THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS CASE

Defendant moves to dismiss Plaintiffs' claim under the Magnuson-Moss Warranty Act ("MMWA") and argues that "[t]he dismissal of Plaintiffs' sole federal claim under the MMW Act removes the basis for this Court's jurisdiction over Plaintiffs' remaining state law claims." *See* Def's Br. at 23.  Defendant is incorrect in its arguments to dismiss Plaintiffs' MMWA claim (as addressed below, *see infra* Argument § IV.C).  However, even if Defendant were correct – which it is not – the Court would still have subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d).

Specifically, Defendant argues that this Court lacks diversity jurisdiction because:  "It is a long-standing principle that each and every class member's claim must satisfy the jurisdictional minimum of $75,000 for a district court to have jurisdiction over the class, and that class claims may not be aggregated to satisfy the amount in controversy."  Def's Br. at 23-24.  While this <u>was</u> a "long-standing principle," that is no longer the case.

"On February 18, 2005 Congress enacted CAFA with the purpose of, *inter alia*, expanding the availability of diversity jurisdiction for class action lawsuits.  CAFA applies to class actions 'commenced on or after the date of enactment' of February 18, 2005." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006).  "CAFA amends the diversity statute by adding a new § 1332(d) to confer original federal jurisdiction over any class action involving (1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, i.e., where at least one plaintiff and one defendant are citizens of different states." *Id.* (citing 28 U.S.C. § 1332(d)(2), (5)(B), (6)).

Here, "[t]his Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant."  Compl. ¶ 12; *see also id.* ¶ 56 ("Members of the Class and Subclasses are so numerous that their individual joinder herein is impracticable. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.").  Consequently, the Court has subject matter jurisdiction over the case.[1]

## III.   CAPATRITI "100% PURE OLIVE OIL" IS ILLEGALLY MISLABELED AS OLIVE OIL

Defendant admits that its "100% Pure Olive Oil" is actually Pomace:  "[A]t all relevant times prior to this action, [Capatriti '100% Pure Olive Oil'] contained only Olive-Pomace Oil." Def's Br. at 8.  That said, Defendant maintains that its "label was true" because "*Olive*-Pomace *Oil* is "olive oil."  *Id.* at 21.  However, on April 25, 2013, the Court ruled that "it is literally false, and not simply potentially misleading, to advertise Pomace as '100% Pure Olive Oil."  *See NAOOA* [Dkt. Nos. 23, 30]; Marchese Decl. Exhs. A, B.  Therefore, Defendant's contention is wrong.[2]

Mislabeling Pomace as "100% Pure Olive Oil" is both illegal and misleading to consumers.  Every legislative, regulatory, and industry standard agrees that Pomace may not be labeled as "olive oil," let alone as "100% Pure Olive Oil."  *See* Compl. ¶¶ 20-33 (identifying standards violated by Defendant set by the FDA, New York State legislature, and the

---

[1] Cases to which Defendant cites are inapposite because they were commenced before CAFA's passage on Feb. 18, 2005.  *See Zahn v. Int'l Paper Co.*, 414 U.S. 291, 312 (1973); *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 590 (1939); *Gilman v. BHC Sec.*, 104 F.3d 1418, 1422 (2d Cir. 1997); *Leyse v. Domino's Pizza LLC*, 2004 U.S. Dist. LEXIS 16869, at *6-7 (S.D.N.Y. Aug. 23, 2004); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F. Supp. 2d 740, 753 (E.D.N.Y. 2001); *DeCastro v. AWACS, Inc.*, 935 F. Supp. 541, 546 (D.N.J. 1996).

[2] Moreover, by Defendant's faulty logic, fool's *gold* is "gold."  But everyone knows that fool's gold is not gold, just like Pomace is not olive oil.

International Olive Council).  Defendant does not point to any contrary standard.  Instead, it argues that it is not bound by any standards.  Defendant is wrong.  The FDA has identified "the proper labeling and nomenclature for various types of olive oils," which prohibit labeling oil "extracted from olive pomace and pits" as "olive oil."  47 Fed. Reg. 42123 (Sept. 24, 1982). Defendant argues that the FDA declined to adopt mandatory standards for grades of olive oil, *see* Def's Br. at 5, but that is because the FDA concluded that existing standards suffice for "the proper labeling and nomenclature for various types of olive oils."  *Id.*

Moreover, New York's Commissioner of Agriculture has adopted standards of identity that prohibit labeling products containing Pomace as "olive oil."  N.Y. Comp. Codes R. & Regs. tit. 1, § 269.1.  New York's Legislature independently mandates disclosing Pomace whenever it is "more than one-half of one per centum" of an oil.  NY Agric. & Mkts. Law § 204-a. Defendant suggests it can circumvent that requirement by using 100% Pomace, instead of a "mixture."  Def's B. at 7-8, 22.  That argument is nonsensical.  Because labeling a blend of 1% Pomace and 99% Olive Oil as "100% Pure Olive Oil" violates New York law, it necessarily follows that passing off 100% Pomace as "100% Pure Olive Oil" violates the law as well.

In recognition of this weight of authority, this Court has recognized that "a number of state, federal, and industry labeling standards … distinguish between olive oil and Pomace, and require the latter to be labeled as such:"

> <u>See</u> 7 C.F.R. § 204.1535 (voluntary USDA standard providing that "[o]live-pomace oils shall not be labeled as 'olive oil'"); 47 Fed. Reg. at 42, 123 (FDA notice explaining that, under certain unnamed labeling standards, "oil extracted from olive pomace and pits by chemical means and refined to make it edible must be labeled either 'refined olive-residue oil' or 'refined extracted olive-residue oil'"); N.Y. Agric. & Mkts. Law § 204-a(a), (b) (separately defining "olive oil" and "olive pomace oil"); N.Y. Comp. Codes R. & Regs. Tit. 1 § 269(a)(1), (c) (establishing separate "standards of identity" for "olive oil" and "olive pomace oil"); International Olive Council, IOC Trade Standard, COI/T.15/NC No 3/Rev. 6 § 2.2 (Nov. 2011) (trade standard of U.N.-based intergovernmental body providing that "[o]live oil is the oil obtained solely from the fruit of the olive tree …, to the exclusion of oils obtained using solvents or re-esterification processes").

*NAOOA* [Dkt. 30] at 16; Marchese Decl. Exh. A.

Defendant then contends that "[t]here can be no dispute that Olive-Pomace Oil is oil derived from olives." Def's Br. at 21. But this argument fares no better. This Court has already found that "[w]hile Pomace may in some sense be 'olive oil' in that it is an oil derived from olives, it is not remotely what the ordinary consumer understands 'olive oil to be.'" *NAOOA* [Dkt. 30] at 17; Marchese Decl. Exh. A. Moreover, Defendant has admitted that "if consumers are notified 'about the presence of Olive-Pomace Oil in Capatriti, its sales of Capatriti certainly will plummet.'" *Id.* Accordingly, as this Court reasoned, "That assertion is telling, since it would be unfounded if consumers already understood the term 'olive oil' to encompass an industrially processed substance like Pomace." *Id.*

Defendant does not have a leg on which to stand. Its flawed arguments were rejected by this Court last month, and Defendant is estopped from relitigating these issues. *See, e.g., Hecke v. Clear Channel Commc'n,* 2005 WL 975837, at *1 (S.D.N.Y. Apr. 27, 2005) (Rakoff, J.) ("Plaintiff's theory of recovery rests on the premise that Winstar, on or about June 2001, breached its agreement with Ric Tower, effectively terminating the contract... However, following a trial in the companion case *Hecke v. Excelsior,* 03 Civ. 4121, the Court found as a matter of law that Winstar did not breach its contract with Ric Tower... Plaintiff, who had a full and fair opportunity to litigate this issue in *Excelsior,* is thus collaterally estopped from relitigating it.").

## IV.   PLAINTIFFS SUFFICIENTLY PLEAD CLAIMS FOR BREACH OF WARRANTIES

### A.   Defendant's Product Representations Are Verifiable Statements Of Fact, Not Mere Puffery

Defendant argues that Plaintiffs' "fail to state a claim for breach of express warranty" because its statements do not constitute warranties. Def's Br. at 9. This is incorrect.

Under New York and New Jersey law, express warranties are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description….

N.Y. U.C.C. 2-313; N.J.S.A. § 12A:2-313.  Moreover, "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty."  *Id.*  Here, the label and packaging of Capatriti "100% Pure Olive Oil" affirms and promises the core fact that the product is "100% Pure Olive Oil" or "100% Pure" in at least 9 places:

(1) The front and back label of Capatriti "100% Pure Olive Oil" prominently displays the product's name.  Additionally, the front and back label represents that the product contains "100% Pure" olive oil.  This text appears in large, vertical letters and is placed adjacent to an image of an olive branch.  Compl. ¶ 44.



(2) One side of the container represents, below the Nutrition Facts, "Product contains high quality olive oil from Italy, Greece, Spain and Tunisia."  Additionally, the product's name is prominently displayed.  *Id.* ¶ 45.

7



(3) The other side of the container represents, "For Centuries, Italians Have Treasured Olive Oil As A Symbol Of Purity, Fortitude And Peace.  Italians have clamored in line to purchase the [sic] Capatriti Olive Oil.  Now, for the first time, thanks to the Gourmet Factory, Americans can also enjoy this renowned olive oil."  Additionally, the product's name is prominently displayed.  *Id.* ¶ 46.



(4) The top of the container also prominently display's the product's name.  *Id.* ¶ 47.



Plaintiffs allege that they each "relied on these representations and warranties in deciding to purchase Capatriti '100% Olive Oil'" and the warranties were "part of the basis of the bargain" in that they "would not have purchased" the product had they "known that the product was not, in fact, 100% pure olive oil." *Id.* ¶¶ 8-9.

Defendant, however, argues that these affirmations of fact and promises are "mere puffery." Def's Br. at 11-12. This is incorrect.

There are two main varieties of puffery. The first form of puffery is defined as "[s]ubjective claims about products, which cannot be proven either true or false." *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995). But this Court has already found that Defendant's claims are "literally false." *NAOOA* [Dkt. 30] at 17; Marchese Decl. Exh. A. As such, this form of puffery cannot apply here.

The second form of puffery is defined as "an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying." *Time Warner Cable, Inc. v. Directv, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007) (internal citations omitted). The challenged representations are precise, objective statements of fact. And Defendant has conceded that "if consumers are notified 'about the presence of Olive-Pomace Oil in Capatriti, its sales of Capatriti certainly will plummet.'" *NAOOA* [Dkt. 30] at 17; Marchese Decl. Exh. A. This admission is telling, because it shows that customers routinely rely on these warranties.

Because of this, on April 19, 2013, this Court issued a Preliminary Injunction ordering Defendant to implement a "notice and sticker program" in order "to ensure that potential consumers do not purchase Pomace that is falsely and misleadingly advertised as 100% Pure Olive Oil." *See id* at 3.[3]

Clearly, neither description of puffery fits the false representations of fact made by Defendant here.

### B.   Plaintiffs' MMWA Claim Stands With Their State Warranty Claims

Defendant argues that different standards apply under the Magnuson-Moss Warranty Act ("MMWA") than under warranty claims brought under state law. *See* Def's Br. 9-11.  This is incorrect.  This Court recently held that "claims under the Magnuson-Moss Act stand or fall with the express and implied warranty claims under state law." *Cali v. Chrysler Group LLC,* 2011 WL 383952 at *4 (S.D.N.Y. Jan. 18, 2011) (citing *Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1022-23 (9th Cir. 2008); *see also Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1013-14 (D.C. Cir. 1986) ("[W]e think it beyond dispute that, as to both implied and written warranties, Congress intended the application of state law.").  Here, the Complaint sufficiently pleads state warranty claims and claims under the MMWA.

### C.   Defendant's Representations That Its Product Is "100% Pure Olive Oil" Constitute Written Warranties Under The MMWA

Defendant argues that the statement "100% Pure Olive Oil" is not an MMWA written warranty because it is a "'product description' rather than a promise that Capatriti is defect free, or guarantees of specific performance levels."  Def's Br. at 10.  This is incorrect.

---

[3] The cases to which Defendant cites are inapposite. *Donahue v. Ferolito Vultaggio & Sons*, 13 A.D. 3d 77, 79 (1st Dep't 2004) contains no treatment of "puffery" at all.  The other two cases both involve scenarios where, unlike here, the defendants' statements were completely subjective rather than factual. *See Scaringe v. Holstein*, 103 A.D.2d 880, 881 (3d Dep't 1984) (statement that car was in "excellent condition" was puffery); *Anderson v. Bungee Int'l Mfg. Corp.*, 44 F. Supp. 2d 534, 541-42 (S.D.N.Y. 1999) (statement that product was "Premium Quality" was puffery).

As an initial matter, it is a question of fact whether a given statement constitutes a written warranty. *McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997). The statute defines a "written warranty" as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time ... which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product."  15 U.S.C. § 2301(6) (A).

Here, Defendant warrants that its product is defect free, because it represents that its product is "100% Pure Olive Oil" and that it is "100% Pure."  *See* Compl. ¶ 44.  The word "pure" is defined as "(1) free from what vitiates, weakens, or pollutes, and (2) containing nothing that does not properly belong."  Merriam-Webster Dictionary, *available at* http://www.merriam-webster.com/dictionary/pure/ (last visited May 8, 2013).  Thus, a representation that Capatriti is "100% Pure Olive Oil" is a promise that (1) the product is, in fact, olive oil and (2) that the purported oil is completely free of impurities or blemishes (*i.e.,* defects). As such, "100% Pure" is clearly a "promise that Capatriti is defect-free."  But, in reality, the product is 100% defective.  *See* Merriam-Webster Dictionary (defining "defective" as "imperfect in form or function" or "falling below the norm in structure or in mental or physical function"), *available at* http://www.merriam-webster.com/dictionary/defective/.

Furthermore, the statement "100% Pure Olive Oil" also promises a "specified level of performance over a specified period of time."  *See* 15 U.S.C. § 2310(6).  This level of performance is characterized by the benefits and health qualities traditionally associated with olive oil.  But to the contrary, given all the chemical treatment, heating, and refining, Pomace does not share all of the same chemical characteristics or health qualities traditionally associated with olive oil.  And the specified period of time for the level of performance is covered by the

"best before" date on the container.[4]

The cases cited by Defendant uniformly involve failed attempts to bring MMWA claims over statements that products are "all natural" or "100% natural."  *See Ivie v. Kraft Foods Global, Inc.*, 2013 U.S. Dist. LEXIS 25615, 42-43 (N.D. Cal. Feb 25, 2013) ("all natural" claim was not create a warranty under the MMWA); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766 at *3 (N.D. Cal. Jul. 20, 2012) (same); *Jones v. ConAgra Foods, Inc.*, 2012 WL 6569393 at *12 (N.D. Cal. Dec. 17, 2012) (same); *Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818 at *6 (C.D. Cal. May 18 2012) (same); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1003-4 (N.D. Cal. 2012) (same).  But these cases are inapposite because a representation that a product is "100% natural" is materially different from a representation that a product is "100% Pure."

For example, the Northern District of California has held that "a food [that] contains artificial and/or synthetic ingredients … does not make it defective."  *Astiana*, 2012 WL 2990766, at *3.  Specifically, court held that ice cream is not defective if it is not "all natural."  *See id.*  Stated otherwise, "all natural" ice cream that fails to be "all natural" still qualifies as ice cream.  But the same is not true of purported "100% Pure Olive Oil" which is made of 100% Pomace.  Pomace is simply not "olive oil" under New York law and all applicable legal standards – let alone "100% pure olive oil."  *See* Compl. ¶¶ 20-33; *NAOOA* [Dkt. 30] at 17; Marchese Decl. Exh. A.  Therefore, Capatriti "100% Pure Olive Oil" is 100% defective.

---

[4] Cases cited by Defendant regarding the MMWA's temporal requirement are inapposite.  In *Kelley v. Microsoft Corp.*, 2007 WL 2600841, at *5 (W.D. Wash. Sept. 10, 2007), the court found that the phrase "Windows Vista Capable" did not create a warranty because Windows Vista was not yet released when plaintiffs purchased their computers.  Here, Capatriti clearly satisfies the temporal element because it is immediately ready for consumption, and readily verifiable whether it meets its promised level of promised.  *Skelton v. Gen Motors Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981) does not help Defendant's argument because the MMWA's temporal requirement is only mentioned in dicta.

**D.      Plaintiffs Sufficiently State Claims For Breach Of Implied Warranties**

Defendant asserts that "Plaintiffs' Breach of Implied Warranty Claims Fail to State a Claim" because (1) Plaintiffs do not "allege their 'particular purpose' for purchasing Capatriti, that Kangadis knew of that particular purpose, and that Capatriti failed to meet that identified purpose," (2) Plaintiffs "make no allegation that Capatriti performed differently than any other Olive-Pomace Oil or … caused any adverse health effects," and (3) "Plaintiffs do not even allege they … consumed Capatriti."  Def's Br. at 13.  These arguments are incorrect as a matter of fact and law.

Plaintiffs assert two claims for breaches of implied warranties:  breach of implied warranty of merchantability, *see* Compl. ¶¶ 75-84, and breach of implied warranty of fitness for a particular purpose, *see id.* ¶¶ 85-90.

     "The implied warranty of merchantability is governed by [the Uniform] Commercial Code § 2-314(1), which provides that 'a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.'"  *Humphrey v. Diamant Boart, Inc.*, 556 F. Supp. 2d 167, 182 (E.D.N.Y. 2008) (quoting N.Y. U.C.C. § 2-314(1)).  "The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection.  To establish that a product is defective for purposes of a breach of implied warranty of merchantability claim, a plaintiff must show that the product was not 'reasonably fit for [its] intended purpose.'"  *Marache v. Akzo Nobel Coatings, Inc.*, 2010 WL 908467, at *16 (S.D.N.Y. Mar. 12, 2010) (citing *Wojcik v. Empire Forklift, Inc.*, 14 A.D.3d 63, 66 (3d Dep't 2004)).

To state a claim for breach of implied warranty of fitness for a particular purpose, "the buyer must establish that [1] the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods are required and that [2] the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods, and [3] that the buyer

13

did in fact rely on that skill." *Id.* (citing *Saratoga Spa & Bath v. Beeche Sys. Corp.*, 230 A.D.2d 326, 331 (3d Dep't 1997). Thus, "[u]nder a theory of ... breach of implied warranty of fitness for a particular purpose, the inquiry is focused on consumer expectations when the product 'was being used for the purpose and in the manner intended.'" *Henry v. Rehab Plus Inc.*, 404 F. Supp. 2d 435, 443 (E.D.N.Y. 2005).

Here, the purpose intended for the product is clearly human consumption. *See* Compl. ¶ 16 ("Consumers use olive oil in many ways. Many add olive oil to salad dressings, marinades, baked goods, sauces, and pastas. In addition, olive oil's high smoke point makes it one of the most stable fats for cooking and frying, and, unlike some other oils, many of its healthful qualities persist after heating."); *see also* Compl. ¶¶ 14-15 (discussing the benefits of consuming olive oil).

Moreover, because of their different chemical and sensory profiles, the various grades of olive oil are fit for completely different types of culinary uses. "From a sensory standpoint, [Pomace] lacks the flavor, delicacy, and bountiful healthful properties of extra virgin olive oil. If used in the kitchen at all, pomace oil is mostly used in industrial settings or in restaurants as a deep frying agent because of its high smoke point (240 degrees Celsius)." Daniel Williams, *Olive Pomace Oil: Not What You Might Think*, Olive Oil Times, Sep. 9, 2010, http://www.oliveoiltimes.com/olive-oil-basics/olive-oil-grades/olive-pomace-oil/6210. In recognition of these differences of purposes and manners in which consumers use different grade oils, Defendant listed on its website that Capatriti "100% Pure Olive Oil" is a "wonderful blend of virgin and refined oil made from hand-picked olives" which is "perfect for salad dressings and grilling vegetables!," while Capatriti "Light Olive Oil" has "high smoke point" which "makes this oil well-suited for frying sautéing, and baking."[5]

In light of this, the argument that either Plaintiffs or Defendant were unaware of the intended purpose of olive oil is patently absurd. *See* Def's Br. at 13. Given the different

---

[5] *See* http://web.archive.org/web/20130323011025/http://www.capatritioliveoil.com/home.html (as site appeared on Mar. 23, 2013).

properties of Pomace and olive oil, Pomace "is not remotely what the ordinary consumer understands 'olive oil' to be." *NAOOA* [Dkt. 30] at 17; Marchese Decl. Exh. A.  Furthermore, because Defendant admits that its product "contained only Olive-Pomace Oil," the Court can determine conclusively that it was not "reasonably fit" for its intended purposes without specific allegations of performance.[6]

Furthermore, Pomace is not merchantable just because it is technically fit for human consumption.  Other courts "reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability.  A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose."  *Keegan v. Am. Honda Motor Co., Inc.*, 2012 WL 75443, at *12 (C.D. Cal. Jan. 6, 2012) (quoting Isip v. Mercedes-Benz USA, LLC, 155 Cal. App. 4th 19, 27 (2007)).  Here, by analogy, Plaintiffs paid for a car but did not receive one because Pomace is not olive oil.

Finally, Defendant's argument that Plaintiffs do not allege "Capatriti performed differently than any other Olive-Pomace Oil or … caused any adverse health effects" misses the point.  *See* Def's Br. at 13.  Plaintiffs did not pay for "100% Olive-Pomace Oil."  Plaintiffs paid for "100% Pure Olive Oil" and received a product that was not merchantable as such.

### E.    Plaintiffs' Breach Of Warranty Claims Do Not Require Privity Of Contract

Defendant contends that Plaintiffs' claims for breach of warranty must be dismissed due to lack of privity.  Def's Br. at 13-14.  Stated otherwise, Defendant's argument is that Plaintiffs have no claim against it because they purchased Capatriti "100% Pure Olive Oil" from *retailers*, not Defendant directly.  *Id.*  This is wrong.

---

[6] The fact that Pomace cannot "pass in the trade without objection" as "pure olive oil" is supported by the fact that Defendant itself, as well as its suppliers define "pure olive oil" in a manner that excludes the use of Pomace and requires the use of some virgin olive oil in the blend.  *See* Supplemental Declaration Of Eryn A. Balch, *NAOOA* [Dkt. 21] ¶¶ 4, 9; Marchese Decl. Exh. C.

First, New Jersey law does not impose a privity requirement on express or implied warranty claims.  "[T]he absence of privity no longer bars a buyer from reaching through the chain of distribution to the manufacturer."  *Paramount Aviation Corp. v. Agusta*, 288 F.3d 67 (3d Cir. 2002) (citing *Alloway v. Gen. Marine Indus.,* 149 N.J. 620, 695 (1997)); *see also McDonough v. Bayer Healthcare, LLC*, 2011 WL 2119107, at *4 (D.N.J. May 26, 2011) ("[T]o establish a breach of an express warranty under N.J. Stat. § 12A:2–101, the plaintiff need not prove privity or traditional reliance.") (internal quotations, citations, and punctuation omitted); *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 454 (D.N.J. 2012) ("New Jersey implies a warranty of merchantability in every contract for the sale of goods … New Jersey does not require privity between a plaintiff and defendant for such claims.").

Second, under New York law, "[P]rivity between the manufacturer of an alleged defective product and the end user is not required to sustain a claim for breach of express warranty."  *Wick v. Wabash Holding Corp.*, 801 F. Supp. 2d 93, 108 (W.D.N.Y. 2011).  In the landmark case of *Randy Knitwear v. Am. Cyanamid Co.*, the New York Court of Appeals held a manufacturer of a fabric liable for misrepresentations "on its own labels and tags which accompanied the fabrics purchased by the plaintiff" despite a lack of privity between the parties.  *Randy Knitwear v. Am. Cyanamid Co.*, 11 N.Y.2d 5, 14 (N.Y. 1962).  The court explained the rational for abolishing the age-old privity requirement:

> The world of merchandising is, in brief, no longer a world of direct contract; it is, rather, a world of advertising …  Under these circumstances, it is highly unrealistic to limit a purchaser's protection to warranties made directly to him by his immediate seller.  The protection he really needs is against the manufacturer whose published representations caused him to make the purchase.

*Id.* at 12-13; *see also Murrin v. Ford Motor Co.*, 303 A.D.2d 475, 477 (2d Dep't 2003) ("[P]rivity is not required to sustain a cause of action seeking to recover damages for breach of an express warranty").[7]

Third, privity is never a required element for breach of implied warranties for sealed food products. *See, e.g., Addeo v. Metropolitan Bottling Co.*, 39 Misc.2d 474, 476 (1st Dep't 1963). "The very act of placing a good product on the market is a representation as to its quality." *Id.*; *see also Rachlin v. Libbry-Owens-Ford Glass Co.*, 96 F.2d 597, 599 (2d Cir. 1938) (acknowledging an "exception to the general [privity] doctrine in the case of medicines and foodstuffs"). Here, Defendant not only markets a food product, but actively encourages consumers to rely on Capatriti's reputation and skill in warranting the quality of the product. This is evident from the side of the Capatriti "100% Pure Olive Oil" container which boasts its "Traditions and family ties," noting that the Capatriti "family mastered the art of producing olive oil" and produces "some of the finest olive oil in the world."

Fourth, privity is satisfied where a consumer purchases a product from an agent of the manufacturer, which is a factual issue. *See, e.g., Paramount Farms, Inc. v. Ventilex B.V.*, 735 F. Supp. 2d 1189, 1217-18 (E.D. Cal. 2010) ("The record raises factual issues as to vertical privity to prevent summary judgment … on the breach of implied warranty claims."); *Nartron Corp. v. Hamilton/Avnet Elecs. of Arizona, Inc.*, No. 5:90-CV-60, 1991 U.S. Dist. LEXIS 19238 (W.D. Mich. Nov. 1, 1991) ("If Avnet were acting as ITT's agent in connection with the sale of the diodes, then privity of contract would exist between ITT and plaintiff.  The resolution of whether

---

[7] Defendant cites *Dibartolo v. Abbott Labs.*, 2012 WL 6681704, at *17 (Dec. 21, 2012).  There, the court held that privity was not necessary for the plaintiff's breach of express warranty claim under N.Y. U.C.C. § 2-318, but noted in passing that "privity is normally 'an essential element of a cause of action for express warranty [under N.Y. U.C.C. § 2-313(1)(a)].'" *Id.* (quoting *Carcone v. Gordon Heatin & Air Conditioning Co.*, 212 A.D.2d 1017, 1018 (4th Dep't 1995)).  This did not purport to contradict the holding of *Randy Knitwear* (nor could it).  This is evident because the *Carcone* court, with which the statement was originally accredited, specifically acknowledged that cases like the present where manufacturers made statements upon which consumers could be reasonably expected to rely were "an exception to that general rule" per *Randy Knitwear.  See Carcone*, 212 A.D.2d at 1018.

an agency relationship exists is a *question of fact that should be resolved by the jury*.") (emphasis added); *Thompson Farms, Inc. v. Corno Feed Prods., Div. of Nat'l Oats Co.*, 173 Ind. App. 682, 711 (Ind. Ct. App. 1977) ("Corno was the seller of the hog houses to Thompson Farms, through its agent Triple T.").

Here, Plaintiff Ebin alleges he understood that in making the sale, the retailer was acting with the knowledge and approval of Gourmet Factory and/or as the agent of Gourmet Factory. Compl. ¶ 8. He also understood that the purchase involved a direct transaction between himself and Gourmet Factory, because his purchase came with Gourmet Factory's representations and warranties that the product was, in fact, 100% pure olive oil. *Id.*; *see also id.* ¶ 9 (alleging same for Plaintiff Jenkins). If there is any question whether the retailers were an agents of Defendant, it is a question of fact that cannot be resolved on a motion to dismiss. *See, e.g.*, *Heredia v. U.S.*, 887 F. Supp. 77, 80 (S.D.N.Y. 2007) (denying defendant's motion to dismiss, stating "New York courts have held that where the circumstances alleged in the pleading raise the possibility of a principal-agent relationship ... questions as to the existence and scope of the agency are issues of fact and are not properly the basis of a motion to dismiss") (internal citations and quotations omitted); *Slotkin v Citizens Cas. Co. of New York*, 614 F. 2d 301, 317 (2d Cir. 1979) (reversing lower court's dismissal of complaint, holding "We agree with plaintiffs that their burden of proof to avoid dismissal of the complaint was not to prove the agency but merely to adduce sufficient evidence to take the issue to the jury").

## V.    PLAINTIFFS SUFFICIENTLY PLEAD CLAIMS UNDER GBL § 349 AND THE NJCFA

Defendant argues that Plaintiffs' GBL § 349 claim should be dismissed because the Complaint purportedly uses "the alleged deception as both act and injury." Def's Br. at 15. This is incorrect. Here, the deception is the mislabeling, an affirmatively false statement, and the injury is the purchase price. Nonetheless, Defendant cites *Small v. Lorillard Tobacco Co.*, a decision from the New York Court of Appeals which dismissed a GBL § 349 claim by plaintiffs

who claimed they would not have purchased cigarettes had they known that nicotine was addictive. *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999).  In response to an amicus brief filed by the New York State Attorney General *in that case*, the court observed:  "The Attorney General may be right that a plaintiff might have a claim" where a consumer paid a higher price for a product as a result of a misrepresentation, such as in a case "*where a distributor asserts that its bottled water is from a pure and pristine mountain stream while in reality, it was only tap water*."  *Id.* at 56 n.5 (emphasis added).  Such is precisely the case here, where Defendant has admittedly marketed a product as "100% Pure Olive Oil" while in reality, it was 100% Pomace.  *See* Def's Br. at 8 (conceding that its product "contained only Olive-Pomace Oil").

More importantly, this argument defies a plain reading of Plaintiffs' Complaint, which alleges Plaintiffs suffered an ascertainable loss because:

> (a) they would not have purchased Capatriti "100% Pure Olive Oil" if they had known it was not, in fact, 100% pure olive oil, and (b) they overpaid for Capatriti "100% Pure Olive Oil" because it is sold at a price premium when compared to Pomace.

Compl. ¶¶ 101, 107; *see also Ackerman v. Coca-Cola Co.*, 2010 WL 2925955 at *23 (E.D.N.Y. Feb. 6, 2012) (distinguishing facts of case from *Lorillard Tobacco Co.* where plaintiffs "explicitly allege[d] that defendants command a premium price for vitaminwater by distinguishing it from soft drinks") (internal quotations and punctuation omitted).[8]

Defendant next argues that "Plaintiffs cannot demonstrate actionable damages" under GBL § 349 or the New Jersey Consumer Fraud Act ("NJCFA").  Def's Br. at 16.  This argument is wrong for several reasons.

---

[8] Defendant's remaining cases fail for the same exact reason:  they all involve cases where plaintiffs did not allege a price premium or other injury.  *See Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (3d Dep't 2007) (dismissing claim because Plaintiff did not allege "the price of the product was inflated as a result of defendant's deception"); *Derbaremdiker v. Applebees's Int'l, Inc.*, 2012 WL 4482057, at *7 (E.D.N.Y. September 26, 2012) (dismissing claim that defendant misrepresented plaintiff's odds of winning sweepstakes where plaintiff's alleged injury was that "he believed his odds of winning a prize in the Sweepstakes was higher than his actual odds"); *Donahue*, 13 A.D.3d at 78 (dismissing false labeling claims where plaintiffs "never alleged … the cost of the beverages was inflated by the[] misrepresentations").

First, Defendant's extraneous "Shoenberg Declr., Ex. "K," and references thereto in Defendant's memorandum, which purportedly reference prices of Pomace products not mentioned in the complaint are improper  because they go "beyond the four corners of the complaint" and must be excluded.  *See Speedmark Transportation, Inc. v. MUI*, 778 F. Supp. 2d 439, 440 n.1 (S.D.N.Y. 2011).  As Magistrate Judge Peck recently noted:

> Where, as here, additional materials are submitted to the Court for consideration with a Rule 12(b)(6) motion to dismiss, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56…  In support of their motion, defendants have submitted affidavits…  These additional materials go beyond the four corners of the complaint….   The Court declines to consider these extraneous materials and will not convert defendants' motion to dismiss into one for summary judgment, since plaintiffs have not had the opportunity to take discovery from defendants.

*Id.* (internal citations and quotations omitted).  Accordingly, the Court may not consider this information at this juncture.

Second, this argument defies black letter law that "[a] court must accept as true the facts alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party – here, the plaintiff[s]."  *See Hsueh v. The Bank of N.Y.*, 2006 WL 2778858, at *2 (S.D.N.Y. Sept. 26, 2006).  As noted, Plaintiffs' Complaint alleges they wouldn't have purchased Capatriti if they had known the truth about Defendant's misrepresentations, and that the product sold at a price premium as compared to Pomace.  Compl. ¶¶ 101, 107.  Furthermore, the Complaint includes a chart showing that "Capatriti '100% Pure Olive Oil' commands a 67% price premium, per fluid once, over a competing Pomace brand."  *Id.* ¶ 6.  The Court must accept these facts as true for the purpose of the present motion.

Third, Defendant neglects to address Plaintiffs' expectation damages.  By misrepresenting Pomace as "100% Pure Olive Oil," Defendant deprived Plaintiffs of the benefit of their bargains.  Defendant concedes that "pure olive oil" (which is what Plaintiffs bargained for) is considerably more valuable than Pomace (which is what Plaintiffs actually received).  *See* Def's Br. at 17.  Moreover, Plaintiffs would not have purchased Pomace *at any price*.  This "is

evidenced by the almost complete lack of consumer demand for Pomace for human consumption in the United States, despite the significantly cheaper price of Pomace compared to olive oil." Compl. ¶ 50.

Fourth, even if the Court were to take Defendant's improper exhibit and arguments at face value – which it may not – they would still, at most, present an argument of fact for the jury to decide.  *See Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 407 (S.D.N.Y. 2009) (a "question of fact … is not properly resolved on a motion to dismiss").

## VI.   PLAINTIFFS SUFFICIENTLY PLEAD A CLAIM FOR FRAUD

Defendant argues that Plaintiffs' substantive claims are not pleaded with sufficient specificity required under Rule 9(b).  Specifically, Defendant maintains that Rule 9(b) requires that each of the Plaintiffs describe their purchase of Capatriti "100% Pure Olive Oil" in precise detail, including the date and time of their purchases, an exact dollar amount, Lot numbers for the tins they purchased, and the cost of other products at their grocery stores.  This is incorrect. Under the Federal Rules, Plaintiffs are not required to plead each of their substantive claims with the specificity required under Rule 9(b).  "[W]here fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)."  *Vess v. Ciba-Geigy Corp.*, 217 F.3d 1097, 1105 (9th Cir. 2003); *see also Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 U.S. Dist. LEXIS 10926, at *14 (S.D. Cal. Feb. 9, 2010) ("Plaintiff alleges that Defendants made misrepresentations and omissions on their product packaging, but does not allege knowledge of falsity or intent to induce reliance.  Accordingly, Plaintiff's claims are not 'grounded in fraud' and Rule 9(b) does not apply.").  Though Rule 9(b) is inapplicable to all of Plaintiffs' claims, each of their allegations are particularly pled such that Rule 9(b) pleading requirements have been satisfied for all claims.

21

Rule 9(b) requires that the complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir. 2007).  On a motion to dismiss, a court must read the complaint generously, and draw all inferences in favor of the pleader. *Id.* (citing *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir. 1985)).

Plaintiffs' allegations satisfy the heightened pleading standard because they are sufficiently precise to allow Defendant to understand the nature of the allegations and to frame a responsive pleading.  These allegations identify Defendant's fraudulent misrepresentations, where and when the misrepresentations were made, and they explain why they are false.

Both Plaintiffs allege they relied on promises made by Defendant that Capatriti "100% Pure Olive Oil" that its product was in fact, 100% pure olive oil.  *See* FAC ¶¶ 8-9.  Each Plaintiff alleges they relied on these representations and warranties in deciding to purchase Capatriti "100% Pure Olive Oil."  *See id.*  Moreover, Plaintiffs allege these statements were part of the basis of the bargain, in that they would not have purchased Capatriti "100% Pure Olive Oil" if they had known that these statements were false.  *Id.*

Defendant's misrepresentations are false because its product was 100% Pomace rather than 100% pure olive oil.  *See* Def's Br. at 8 ("at all relevant times prior to this action, it contained only Olive-Pomace Oil").  As discussed above, these statements violate a number of state, federal, and industry labeling standards, and the Court has already found them to be "literally false."  *See NAOOA* [Dkt. 30] at 17; Marchese Decl. Exh. A.  Likewise, Plaintiffs allege they relied on these misrepresentations in paying a substantial price premium for the product.  Compl. ¶ 6.

Finally, Defendant's argument that "the Complaint is devoid of any allegation that would give rise to an inference of scienter" is incorrect.  *See* Def's Br. at 19.  "Rule 9(b) permits malice, intent, knowledge, and other condition of mind to be averred generally.  In this regard … it would be unworkable and unfair to require great specificity in pleading scienter, since a plaintiff realistically cannot be expected to plead a defendant's actual state of mind."  *Stern v. Leucadia Nat. Corp.*, 844 F.2d 997, 1004 (2d Cir. 1988) (internal citations, quotations, and punctuation omitted).  Here, the Complaint alleges:

> Gourmet Factory's misbranding is intentional.  Olive oil and Pomace arise out of distinct production processes, and any reasonable quality-control check would detect the presence of Pomace.  A packer or distributor of olive oils therefore does not unwittingly mislabel Pomace as olive oil.

Compl. ¶ 5.  Moreover, the Complaint also alleges:  "In 2009 … Dennis Kangadis, Gourmet Factory's vice president, tried and failed to enjoin the Connecticut Department of Consumer Protection from … banning misbranding olive oil that did not comply with [IOC] standards.  *Id.* ¶ 12.[9]

In sum, the allegations in the FAC provide "all of the essential factual background that would accompany the first paragraph of any newspaper story – that is, the 'who, what, when, where and how' of the events at issue."  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citations omitted); *see also U.S. ex rel. Polansky v. Pfizer, Inc.*, 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009) ("Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud.").

**Who:**      The Complaint specifically identifies Defendant as the entity that falsely labeled Capatriti "100% Pure Olive Oil."  Compl. ¶ 1.

---

[9] These in-depth allegations give rise to a strong inference of fraudulent intent by explaining Plaintiffs' underlying bases in making them.  By contrast, in *Liberty Mur. Ins. Co. v. WAWA Tours, Inc.*, 2007 WL 2743500, at *7 (E.D.N.Y. Sept. 18, 2007), the plaintiff baldly alleged that the defendants made "material misrepresentations knowing them to be false or in reckless disregard of their accuracy."

| | |
|---|---|
| **What:** | The Complaint identifies and describes the product.  *Id.* ¶¶ 4, 44-48.  Plaintiffs allege Defendant falsely represents that the product is "Olive Oil" or "100% Pure" olive oil in at least 9 places on its packaging:  (i) the product's name (*i.e.,* Capatriti "100% Pure Olive Oil") is prominently placed on the top of the container and on all 4 sides, (ii) the representation "100% Pure" appears in large, vertical letters on the front and back of the container, (iii) the text, "Product contains high quality olive oil" appears below the Nutrition Facts, and (iv) one side of the container represents that "thanks to the Gourmet Factory, Americans can also enjoy this renowned olive oil."  *Id.* ¶ 4. |
| **Where:** | The Complaint explains that Defendant made the false statements directly on the product's label and packaging.  *Id.*  Moreover, both Plaintffs allege where they purchased Capatriti "100% Pure Olive Oil."  Plaintiff Ebin purchased it at a local grocery store in Bronx County, NY, and Plaintiff Jenkins purchased it at a local grocery store in New Jersey.  *Id.* ¶¶ 8-9. |
| **When:** | Both Plaintiffs allege when they purchased the product.  Plaintiff Ebin purchased it in late 2012, and Plaintiff Jenkins purchased it in early 2013.  *Id.* ¶¶ 8-9.  And each alleges that they read and relied on Defendant's misrepresentations prior to purchase.  *Id.* |
| **How:** | The Complaint explains how Defendant's statements were false and misleading.  "Calling a product 'olive oil' when it contains Pomace or any other non-olive oil is barred by an array of olive-oil making conventions, standard industry practice, international regulations, and federal and state laws."  *Id.* ¶ 3.  The Complaint also alleges Plaintiffs were induced to pay substantially more for Capatriti "100% Pure Olive Oil" based on the false representations.  *Id.* ¶¶ 6, 8-9. |

Thus, Defendant is wrong that Plaintiffs' "allegations are insufficient to sustain a consumer protection claim based on fraud."  Def's Br. at 20.

## VII.   PLAINTIFFS SUFFICIENTLY PLEAD A CLAIM FOR UNJUST ENRICHMENT

Defendant asserts that Plaintiffs' unjust enrichment claim must fail because it is "derivative of the other claims asserted by them."  Def's Br. at 20.  This is incorrect.  In fact, New York courts recognize that unjust enrichment claims are quite versatile – they may be pled in the alternative, and they are not mutually exclusive with other types of claims.  *See* Fed. R. Civ. P. 8(a)(3) ("[A] demand for the relief sought, which may include relief in the alternative or different types of relief.");  *see also, e.g., Pramer, S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 100 (N.Y. App. Div. 2010); *Niagara Mohawk Power Corp. v Freed*, 265 A.D.2d 938, 939 (N.Y.

App. Div. 1999).  Here, Plaintiffs' Complaint sufficiently alleges all the elements of a claim for unjust enrichment.  *See* Compl. ¶¶ 8-9, 18-52; *see also Bitter v. Renzo*, 2012 WL 7856951, at *10 (N.Y. Sup. Apr. 12, 2012) ("To succeed on a claim of unjust enrichment, the plaintiff must prove the following elements:  (1) the other party was enriched, (2) at that party's expense, and (3) that it is against good conscience and equity to permit the other party to keep what is sought to be recovered.")

## VIII.   LEAVE TO AMEND

Should the Court find dismissal of any claims warranted, Plaintiffs seek leave to amend the Complaint.  "Fed. R. Civ. P. 15(a) requires that leave to amend shall be freely given when justice so requires."  *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (internal quotations and alterations omitted).  "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."  *Id.* (internal quotations omitted); *see also Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252-53 (2d Cir. 1991) (remanding where plaintiff, faced with the Eleventh Amendment immunities of the named defendants, had requested leave to re-plead claims against the defendants in their personal capacities).  In addition, "[c]omplaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend."  *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss in its entirety.

Dated:  May 17, 2013

Respectfully submitted,


By:    */s/ Joseph I. Marchese*
       Joseph I. Marchese

**BURSOR & FISHER, P.A.**
Scott A. Bursor (SB1141)
Joseph I. Marchese (JM1976)
Neal J. Deckant (ND1984)
888 Seventh Ave
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
      jmarchese@bursor.com
      ndeckant@bursor.com

*Attorneys for Plaintiffs*