UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSEPH EBIN and YERUCHUM JENKINS, individually and on behalf of all others similarly situated,

                       Plaintiffs,

   -against-

KANGADIS FOOD, INC. d/b/a/ THE GOURMET FACTORY,

                       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

Docket No. 13-cv-2311 (JSR)

---

### DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

---

                                                  FARRELL FRITZ, P.C.
                                                  *Attorneys for Defendant*
                                                  1320 RXR Plaza
                                                  Uniondale, New York 11556
                                                  (516) 227-0700

*Of Counsel:*

    John P. McEntee
    Kevin P. Mulry
    Michael A.H. Schoenberg

## **TABLE OF CONTENTS**

Page

**TABLE OF AUTHORITIES** ................................................................................................... ii

**PRELIMINARY STATEMENT** ............................................................................................... 1

**ARGUMENT** ............................................................................................................................. 2

    Point I .................................................................................................................................. 2

        THE COURT LACKS SUBJECT MATTER
        JURISDICTION UNDER THE MMWA AND CAFA ....................................... 2

            A.    Plaintiffs Do Not Demonstrate Federal
                  Question Jurisdiction Under the MMWA ....................................... 2

            B.    Plaintiffs Fail to Allege Facts Supporting
                  a Finding of Jurisdiction Under CAFA ........................................... 3

    Point II ................................................................................................................................ 4

        PLAINTIFFS FAIL TO PLEAD ANY CLAIM FOR BREACH OF WARRANTY ............ 4

            A.    Plaintiffs Do Not Identify Any Written Express Warranty ............................... 5

            B.    Plaintiffs Fail to Allege Facts to Sustain
                  Their Breach of Implied Warranties Claims ...................................................... 6

    Point III ............................................................................................................................... 8

        PLAINTIFFS HAVE NOT ALLEGED ANY ACTUAL INJURY UNDER
        THE NEW YORK AND NEW JERSEY CONSUMER FRAUD STATUTES .................... 8

    Point IV .............................................................................................................................. 9

        PLAINTIFFS FAILED TO SUFFICIENTLY
        PLEAD THEIR FRAUD BASED CLAIMS ....................................................................... 9

    Point V .............................................................................................................................. 10

        PLAINTIFFS' REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED ............... 10

**CONCLUSION** ........................................................................................................................ 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
  129 S.Ct. 1937 (2009) .................................................................................................. 4, 9

*Astiana v. Dreyer's Grand Ice Cream, Inc.,*
  2012 WL 2990766 (N.D. Cal. July 20, 2012) ................................................................ 5

*Blockbuster Inc. v. Galeno,*
  472 F.3d 53 (2d Cir. 2006) ............................................................................................ 3

*Cali v. Chrysler Group LLC,*
  2011 WL 383952 (S.D.N.Y. 2011) (Rakoff, J.), *aff'd* 426 Fed. Appx. 38
  (2d Cir. Aug 30, 2011) ............................................................................................... 6, 7

*Chodkowski v. City of New York,*
  2007 U.S. Dist. LEXIS 67822 (S.D.N.Y. Sept. 11, 2007) ............................................. 8

*Dougherty v. Sears Holdings Corp.,*
  2012 U.S. Dist. LEXIS 178199 (S.D.N.Y. Dec. 12, 2012) ........................................... 4

*Duquesne Light Co. v Westinghouse Elec. Corp.,*
  66 F.3d 604 (3d Cir. 1995) ............................................................................................ 1

*Fireman's Fund Ins. Co. v. N.Y. General Mech., Inc.,*
  1992 U.S. Dist. LEXIS 7481 (W.D.N.Y. May 22, 1992) ............................................. 5

*Frederico v. Home Depot,*
  507 F.3d 188 (3d Cir. 2007) .......................................................................................... 4

*In re Carter-Wallace, Inc. Sec. Lit.,*
  220 F.3d 36 (2d Cir. 2000) .......................................................................................... 10

*In re Lehman Bros. Mortgage-Backed Securities,*
  650 F.3d 167 (2d Cir. 2011) ........................................................................................ 10

*In re Parmalat Sec. Litig.,*
  479 F. Supp. 2d 332 (S.D.N.Y. 2007) ........................................................................... 9

*Keegan v. Am. Honda Motor Co., Inc.,*
  2012 WL 75443 (C.D. Cal. Jan. 6, 2012) ...................................................................... 6

*Leeds v. Meltz,*
  85 F.3d 51 (2d Cir. 1996) .............................................................................................. 9

*Lieb v. American Motors Corp.,*
  538 F. Supp. 127 (S.D.N.Y. 1982) ................................................................................ 3

...

...

*Mattera v. Clear Channel Comm. Inc.*,
  239 F.R.D. 70 (S.D.N.Y. 2006) .................................................................................. 3

*Paramount Farms, Inc. v. Ventilex B.V.*,
  735 F. Supp. 2d 1189 (E.D. Cal. 2010) ..................................................................... 7

*Perry v. NYSARC, Inc.*,
  2011 U.S. App. LEXIS 10806 (2d Cir. 2011) ........................................................... 8

*Stewart v. Smart Balance, Inc.*,
  2012 U.S. Dist. LEXIS 138454 (D.N.J. June 25, 2012) ............................................ 5

*Taylor v. Vt. Dep't of Educ.*,
  313 F.3d 768 (2d Cir. 2002) ....................................................................................... 8

*Viscusi v. Proctor & Gamble*,
  2007 U.S. Dist. LEXIS 51307 (E.D.N.Y. July 16, 2007) .......................................... 6

*Wigand v. Flo-Tek, Inc.*,
  609 F.2d 1028 (2d Cir. 1979) ..................................................................................... 3

*Wilson v. Merrill Lynch & Co., Inc.*,
  671 F.3d 120 (2d Cir. 2011) ..................................................................................... 10

*Wood v. GMC*,
  2010 U.S. Dist. LEXIS 96157 (E.D.N.Y. Aug. 23, 2010) ......................................... 3

**STATE CASES**

*Addeo v. Metropolitan Bottelling Co.*,
  39 Misc. 2d 474 (1st Dept. 1963) ............................................................................... 7

*Baron v. Pfizer, Inc.*,
  42 A.D.3d 627 (3d Dept. 2007) .................................................................................. 8

*Beyer v. DaimlerChrysler Corp.*,
  286 A.D.2d 103 (2d Dept. 2001) ................................................................................ 7

*Donahue v. Ferolito, Vultaggio & Sons*,
  13 A.D.3d 77 (1st Dept. 2004) ............................................................................. 6, 8

**STATUTES RULES AND REGULATIONS**

15 U.S.C. § 2310(d)(3) ..................................................................................................... 2

28 U.S.C. § 1332 .............................................................................................................. 4

28 U.S.C. § 1332(d)(2) ................................................................................................. 2, 4

Class Action Fairness Act ....................................................................................... 2, 3, 4

Federal Rules of Civil Procedure Rule 9(b) ................................................................................ 9, 10

Magnuson–Moss Warranty Act ................................................................................................... 2, 4

New York's General Business Law § 349 ...................................................................................... 8

Kangadis[1] respectfully submits this Reply Memorandum of Law in further support of its motion for an order dismissing Plaintiffs' Complaint with prejudice.

## PRELIMINARY STATEMENT

Underlying all of Plaintiffs' claims is the general notion that their subjective expectation of a "better" quality olive oil is legally actionable as a breach of warranty. Plaintiffs, however, do not allege they were ever physically harmed by consuming Capatriti, and they cannot establish they "paid a premium" for Capatriti over other olive-pomace oil or olive oil products. In other words, Plaintiffs allege nothing more than that they "expected" something different from what they actually paid for. But, allegations of disappointed "expectations" are not sufficient to impose legal liability. *See, e.g., Duquesne Light Co. v Westinghouse Elec. Corp.*, 66 F.3d 604, 614, fn. 9 (3d Cir. 1995) ("[o]f course, the parties expectations, standing alone, are irrelevant without any contractual hook on which to pin them"). Instead, Plaintiffs must establish an identifiable warranty, a defect in the product, actual damages, and, for their breach of implied warranties claims, privity with Kangadis. Plaintiffs have done no such thing.[2]

But first, the Court must consider its subject matter jurisdiction. No such jurisdiction exists here, as Plaintiffs fail to allege the statutory predicates for maintaining their MMWA claim, *to wit*., individual claims exceeding $25 – Plaintiffs' claims are for, at most, $17, – an aggregate amount in controversy exceeding $50,000 – Plaintiffs aggregated claims are for $34 – and, more than 100 named plaintiffs for the class action – there are only two named Plaintiffs. Plaintiffs also fail to

---

[1] Capitalized terms used, but not otherwise defined, herein shall take the meanings given to them in Kangadis's Memorandum of Law dated May 3, 2013 ("Kangadis Memo.") submitted in support of its motion to dismiss the Complaint.

[2] Plaintiffs rely heavily on the Court's Preliminary Injunction Opinion in the *NAOOA v. Kangadis* case (Docket No. 13-cv-0868). *See* Marchese Declr., Ex. "A." That Decision was analyzed in a context different than that raised in this action, as the NAOOA action asserts claims different than those asserted by Plaintiffs here. Accordingly, the Decision does not save Plaintiffs' claims from dismissal.

properly allege jurisdiction under the Class Action Fairness Act ("CAFA"), as Plaintiffs offer nothing more than a single conclusory allegation that they will meet the $5,000,000 claim threshold.

Finally, Plaintiffs' half-hearted request for leave to serve an amended pleading should be denied, as they did not make a formal motion for such relief and, regardless, they fail to offer any new facts (let alone a proposed pleading) that would save their claims from dismissal.

Accordingly, the Complaint should be dismissed, with prejudice, in its entirety.

## ARGUMENT

### Point I

### THE COURT LACKS SUBJECT MATTER JURISDICTION UNDER THE MMWA AND CAFA

Plaintiffs claim this Court has subject matter jurisdiction under the MMWA or, alternatively, CAFA.  *See* 28 U.S.C § 1332(d)(2).  Plaintiffs, however, fail to allege facts to support such invocations of the Court's jurisdiction.  The Complaint should, therefore, be dismissed.

**A.**     **Plaintiffs Do Not Demonstrate Federal Question Jurisdiction Under the MMWA**

Federal jurisdiction under the MMWA is restricted to suits that satisfy three statutory prerequisites: (1) the amount in controversy of any individual claim must be at least $25; (2) the overall amount in controversy must be at least $50,000; and (3) at least one hundred plaintiffs must be named to maintain a class action. *See* 15 U.S.C. 2310(d)(3).  Plaintiffs fail to allege these prerequisites.

Plaintiffs' individual claims do not exceed the minimum $25 threshold (or $50,000 amount in controversy) required for jurisdiction over their MMWA claim.  Both Plaintiffs allege they purchased a single tin of Capatriti. *See* Complt., ¶¶ 8-9.  Plaintiffs then allege that a tin of Capatriti costs $16.49.  *See id*., ¶ 6; *see also* Schoenberg Declr., Ex. "J," at ¶ 33.  Thus, assuming a recovery of the full purchase price paid by Plaintiffs for Capatriti (which is not the proper measure of damages under the MMWA), Plaintiffs' damages are capped at $16.49, or less than the $25 for the

individual claims and, considering there are only two claims, far less than the $50,000 aggregated amount in controversy required under the MMWA. *See Lieb v. American Motors Corp.*, 538 F. Supp. 127, 133 (S.D.N.Y. 1982) (finding that only named plaintiff's claims can be aggregated for the amount in controversy); *Wood v. GMC*, 2010 U.S. Dist. LEXIS 96157 (E.D.N.Y. Aug. 23, 2010) (dismissing MMWA claims because plaintiff failed to allege the minimum amount in controversy).

The Complaint also does not name the required minimum number of plaintiffs. Although the lawsuit is captioned as a class action, only two plaintiffs are named in the Complaint. The Second Circuit has made clear, "[j]urisdiction is to be determined as of the commencement of suit." *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028 (2d Cir. 1979). Thus, the Complaint fails to meet this threshold requirement for maintaining their MMWA claim as a class action. *See Wood v. GMC*, 2010 U.S. Dist. LEXIS 96157 (E.D.N.Y. Aug. 23, 2010) (dismissing MMWA claim for lack of federal question jurisdiction) (citing *Lieb*, 538 F. Supp. 127, 133 (S.D.N.Y. 1982) (dismissing argument that Plaintiffs need not name other plaintiffs to satisfy jurisdiction until class certification is sought)).

**B.      Plaintiffs Fail to Allege Facts Supporting a Finding of Jurisdiction Under CAFA**

Plaintiffs argue that, assuming the dismissal of their MMWA claim, the Court still has subject matter jurisdiction under CAFA. *See* Pltf. Opp., p. 3. Plaintiffs, again, fail to allege facts sufficient to support such a finding.

The party seeking to invoke the federal court's subject matter jurisdiction, including jurisdiction under CAFA, bears the burden of proving by a preponderance of the evidence that there is a "reasonable probability" that subject matter jurisdiction exists. *See e.g., Mattera v. Clear Channel Comm. Inc.*, 239 F.R.D. 70, 78 (S.D.N.Y. 2006); *see also, Blockbuster Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006) (requiring that defendant who removed case from state court demonstrate

the $5,000,000 amount in controversy). "[N]either a conclusory statement that the amount in controversy exceeds the sum specified in 28 U.S.C. § 1332, nor a 'mere averment' is enough to satisfy that burden." *Dougherty v. Sears Holdings Corp.*, 2012 U.S. Dist. LEXIS 178199 (S.D.N.Y. Dec. 12, 2012) (citations omitted); *see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).

That, however, is all Plaintiffs offer in the Complaint, as they make only a single allegation that merely recites the jurisdictional elements under 28 U.S.C. § 1332(d)(2). *See* Complt., ¶12. Plaintiffs offer no allegation from which the Court can even reasonably infer that the putative class claims will exceed the $5 million CAFA threshold, especially considering the relatively small amount of monetary damages alleged. *See, e.g.,* Complt., ¶ 6 (alleging mere pennies (or, at the most, a few dollars) of supposed damages per tin of Capatriti purchased).

On a motion to dismiss, the party alleging jurisdiction must submit proof to "justify his allegations by a preponderance of the evidence." *Frederico v. Home Depot*, 507 F.3d 188, 194 (3d Cir. 2007). Here, Plaintiffs have not offered anything to substantiate their bare jurisdictional allegation. Accordingly, the Complaint should be dismissed for lack of subject matter jurisdiction.[3]

### Point II

### PLAINTIFFS FAIL TO PLEAD ANY CLAIM FOR BREACH OF WARRANTY

Glaringly absent from Plaintiffs' opposition is any citation to a decision finding that a food label, like that on Capatriti, creates an actionable express or implied warranty. *See, e.g.,* Pltf. Opp., pp. 10-12. It does not. But even if the Capatriti label did create such a warranty, Plaintiffs still fail to allege any attendant breach, as they do not allege any defect in the product or that Capatriti failed

---

[3] Plaintiffs' opposition does not refute the fact that there is no basis here to justify the Court retaining supplemental jurisdiction over the remaining state law claims after the MMWA claim is dismissed. Accordingly, absent subject matter jurisdiction, the Court should not exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *See* Kangadis Memo., Point VII, at pp. 22-23.

4

to perform according to its stated purpose; *i.e.,* as an olive oil fit for human consumption. Plaintiffs also fail to allege privity with Kangadis for their New York breach of implied warranties claims.

A. **Plaintiffs Do Not Identify Any Written Express Warranty**

Plaintiffs attempt to support their breach of express warranty claims by arguing the "100% Pure Olive Oil" description on Capatriti's label constitutes a written warranty that the product is "defect free." Pltf. Opp., pp. 10-11. Plaintiffs' argument is unavailing, as Capatriti does not contain any express warranty and, even if it did, it did not contain any "defect" in breach of such warranty.

Capatriti's label is not a written warranty, as it is a product description "rather than [a] promise[] that [the product is] defect-free, or [a] guarant[y] of specific performance level." *See* Kangadis Memo., pp. 9-12 (citing cases). Plaintiffs do not cite a single decision finding otherwise. Instead, without any support whatsoever, Plaintiffs argue that the phrase "100% natural" "is materially different from a representation that a product is '100% Pure.'" Pltf. Opp., p. 12. Plaintiffs argue only a distinction without any factual or legally recognized difference. *See Stewart v. Smart Balance, Inc.*, 2012 U.S. Dist. LEXIS 138454, *40 (D.N.J. June 25, 2012) (finding phrase "fat free" did not constitute a warranty that the milk was "defect free"); *Fireman's Fund Ins. Co. v. N.Y. General Mech., Inc.*, 1992 U.S. Dist. LEXIS 7481, *10 (W.D.N.Y. May 22, 1992) (dismissing breach of express warranty claims because plaintiffs failed to offer any evidence of any warranty).

Even assuming Capatriti did contain an express warranty, the Complaint fails to explain how Capatriti was allegedly defective, as Plaintiffs concede it was fit for human consumption. In fact, the only decision cited by Plaintiffs – *Astiana v. Dreyer's Grand Ice Cream, Inc.* – undermines their argument, as the Court in that case dismissed plaintiffs' breach of warranty claim upon its finding that even the addition of synthetic ingredients to "all natural" ice cream did not create a "defect" under the MMWA. 2012 WL 2990766, *2-3 (N.D. Cal. July 20, 2012). Here, there is no allegation that Capatriti contains any synthetic ingredients, as it is undisputed that it contains only Olive-

5

Pomace Oil which is made only from olives. *See, e.g.,* Preliminary Injunction Opinion (Marchese Declr., Ex. "A"), at p. 17 (finding that "Pomace may in some sense be "olive oil" in that it is an oil derived from olives . . . .); Schoenberg Declr., Ex. "B," at p. 2 (NAOOA's Vice-President, Eryn Balch's testimony that "olive-pomace oil is **made only from olives** and contain[s] the same proportion of healthy monosaturated fats" as other grades of olive oil) (emphasis added); Conte Report (Schoenberg Declr., Ex. "I"), at p. 4, Point II.C. (noting the chemicals used to extract Olive-Pomace Oil are removed during the refining process).

### B. Plaintiffs Fail to Allege Facts to Sustain Their Breach of Implied Warranties Claims

Plaintiffs concede that "the purpose intended for [Capatriti] is clearly human consumption." Pltf. Opp., p. 14. Not surprisingly, Plaintiffs then fail to explain (let alone allege) how Capatriti was *not* fit for that purpose, as they also admit they consumed Capatriti without adverse health effects.

It is well-settled that the implied warranties of merchantability and fitness for a particular purpose "do not mean that the product will fulfill a 'buyer's every expectation' but rather simply 'provides for a minimum level of quality.'" *Viscusi v. Proctor & Gamble*, 2007 U.S. Dist. LEXIS 51307, at *13 (E.D.N.Y. July 16, 2007). As Capatriti contained olive oil fit for human consumption, it met its intended purpose and, consequently, did not breach any implied warranty. *See Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 79 (1st Dept. 2004) (affirming dismissal of breach of implied warranty claim where beverage was fit for human consumption and did not cause any ill effect). For this reason, the decision in *Keegan v. Am. Honda Motor Co., Inc.*, 2012 WL 75443 (C.D. Cal. Jan. 6, 2012), cited by Plaintiffs, is clearly distinguishable, as the vehicle in that case was not reasonably drivable, while Capatriti, on the other hand, was not only consumable, but could be used just as any other olive oil could be used for cooking by the average consumer.

Plaintiffs' breach of implied warranty claim also fails because New York law requires privity where, as here, only economic harm is alleged. Kangadis Memo., pp. 13-14; *see also Cali v.*

*Chrysler Group LLC*, 2011 WL 383952, *1 (S.D.N.Y. 2011) (Rakoff, J.) ("It is now settled that no implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss . . . is alleged."), *aff'd* 426 Fed. Appx. 38 (2d Cir. Aug 30, 2011); *Beyer v. DaimlerChrysler Corp.*, 286 A.D.2d 103 (2d Dept. 2001) (dismissing breach of implied warranty claim where purchase was from an "authorized dealership/agent").  Here, no privity exists between the parties as Plaintiffs do not (and cannot) allege they purchased Capatriti directly from Kangadis.  *See* Complt., ¶¶ 8-9 (alleging purchases from a "local grocery store").

Given this, Plaintiffs argue that privity is not required "for breach of implied warranties for sealed food products."  Pltf. Opp., p. 17.  Plaintiffs' sole citation to a half-decade old Appellate Division decision – *Addeo v. Metropolitan Bottelling Co.* – is unpersuasive.  *See id*. (citing 39 Misc. 2d 474 (1st Dept. 1963).  In *Addeo*, unlike here, the plaintiff was an employee of the retailer that directly purchased the defective soda bottle from the distributor.  Further, unlike here, the plaintiff in *Addeo* suffered physical injuries when the allegedly defective bottle exploded.  *See id*.  Given these facts, the *Addeo* decision is distinguishable from, and inapplicable to, this action.

Finally, despite their claim to the contrary, Plaintiffs did not purchase Capatriti from an agent of Kangadis.  Rather, Kangadis sells Capatriti to wholesalers who, in turn, resell the product to retailers from whom Plaintiffs then made their purchase.  Plaintiffs do not allege any facts or cite any New York decision supporting a finding that the twice removed retailers of Capatriti are Kangadis's agents.  Even the California decision cited by Plaintiffs makes this point.  *See Paramount Farms, Inc. v. Ventilex B.V.*, 735 F. Supp. 2d 1189, 1217 (E.D. Cal. 2010) ("an 'end consumer' who 'buys from a retailer is not in privity with a manufacturer.'").

**Point III**

**PLAINTIFFS HAVE NOT ALLEGED ANY ACTUAL INJURY UNDER
THE NEW YORK AND NEW JERSEY CONSUMER FRAUD STATUTES**

The documentary evidence submitted by Kangadis conclusively refutes Plaintiffs' allegation that it suffered any economic harm because they could not have purchased Olive-Pomace Oil (or any other olive oil) for less than they purchased Capatriti. *See* Kangadis Memo., pp. 14-17; Schoenberg Declr., Ex. "K." This flatly contradicts the essential allegation in the Complaint that Plaintiffs paid a "price premium . . . over competing Pomace brands." *See* Complt., ¶ 6. For this reason, the Sixth (GBL § 349) and Seventh (NJCFA) Claims for Relief should be dismissed.[4]

Rather than confront this fatal fact directly, Plaintiffs seek to limit the Court to the four-corners of the Complaint. *See* Pltf. Opp., pp. 20-21. The Court, however, is not so limited, as it may consider "documents attached to the complaint, or documents incorporated within the complaint by reference." *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002); *Perry v. NYSARC, Inc.*, 2011 U.S. App. LEXIS 10806, *3 (2d Cir. 2011) (finding that when "factual assertions . . . are contradicted by the complaint itself, [or] by documents upon which the pleadings rely," they should not be accepted as true); *Chodkowski v. City of New York*, 2007 U.S. Dist. LEXIS 67822, *11 (S.D.N.Y. Sept. 11, 2007) (recognizing the court may consider documents "either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit"). Here, the Complaint includes a claim concerning the comparative costs of Capatriti and other olive-pomace oil products which necessarily relies on third-party sales data. *See* Complt., ¶ 6. Consequently, the Court may consider the third-party sales data offed by Kangadis that totally

---

[4] To the extent Plaintiffs concede their GBL § 349 claim is based upon an allegation that they "would not have purchased Capatriti [] if they had known it was not . . . 100% pure olive oil," (Complt., ¶¶ 101, 107; Pltf. Opp., p. 19), or some vague notation of "expectancy damages," their claim necessarily (and improperly) alleges deception as both act and injury. *See* Kangadis Memo., p. 15 (citing *Baron v. Pfizer, Inc.*, 42 A.D.3d 627 (3d Dept. 2007) and *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77 (1st Dept. 2004) ("deception as both act and injury . . . [is] a theory specifically rejected by our courts")).

refutes Plaintiffs' claim. *See* Schoenberg Declr., Ex. "K."

Even if the Court constrains itself to the allegations in the Complaint, it still should dismiss Plaintiffs' consumer deception claims because their allegation of economic damages is based on a conclusory and "unwarranted deduction of fact" on which the Court may not rely. *See Iqbal*, 129 S. Ct. at 1949-50; *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) (finding the Court need not accept as true "bald assertions" of fact). Indeed, Plaintiffs' claim that they paid a "price premium" for Capatriti is totally unsupported by (i) any reference to the source of the information in the allegation, (ii) the actual retail price of "Marconi Olive Pomace Oil" at their local grocery store, and (iii) any allegation that such comparative product could have been purchased by Plaintiffs. Absent this, the Court is left with only "bald assertions" of fact that it need, and should, not accept as true.

### Point IV

### PLAINTIFFS FAILED TO SUFFICIENTLY PLEAD THEIR FRAUD BASED CLAIMS

Plaintiffs argue they either do not have to comply with the strict pleading requirements under Rule 9(b) or, if they do, that they have sufficiently pled their fraud based claims. *See* Pltf. Opp., pp. 18-20. Plaintiffs are wrong on both accounts.

First, Plaintiffs' assertion that "Rule 9(b) is inapplicable to all of Plaintiffs' claims" is preposterous, as their Ninth Claim for Relief specifically sounds in fraud. *See* Complt., ¶¶ 117-21. Further, their Eighth Claim for Relief, entitled "Negligent Misrepresentation," is a carbon copy of their fraud claim, as it too alleges an intentional fraudulent misrepresentation. *Compare id. with id.*, at ¶¶ 111-12. Thus, both claims for relief are subject to Rule 9(b)'s heightened pleading standard. *In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332, 340 (S.D.N.Y. 2007) (applying Rule 9(b) to negligent misrepresentation claim).

Second, neither claim meets the heightened pleading requirement under Rule 9(b). *See* Kangadis Memo., pp. 18-20. Indeed, Plaintiffs' claims are based entirely on two vague and

9

unsubstantiated allegations that they purchased Capatriti "in late 2012" or "early 2013" from a "local grocery store." Complt., ¶¶ 8-9. Plaintiffs do not even allege particularly how much they actually paid for Capatriti. *See id*. (making no such cost allegation by Jenkins).

Furthermore, the Complaint is devoid of any allegation of scienter or a fraudulent intent, as Plaintiffs do not allege a violation of any *mandatory* labeling requirement. *In re Carter-Wallace, Inc. Sec. Lit.*, 220 F.3d 36, 39 (2d Cir. 2000) (finding that, although Rule 9(b) relaxes the specificity requirements for scienter, that "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations."). To the contrary, each of the "standards" referenced by Plaintiffs "are either legally nonbinding or unenforceable through a private right of action." Preliminary Injunction Opinion, at p. 8; Kangadis Memo., pp. 4-8, 20-22.

Plaintiffs also fail to allege any actual injury from the purchase of Capatriti, as their general averment that they "overpaid" for Capatriti is contradicted by the sales data showing that Plaintiffs could not have purchased olive-pomace oil (or any other olive oil) product for less than what they paid for Capatriti. *See* Point III, *supra*; Schoenberg Declr., Ex. "J," ¶ 33 (alleging that "Olive Oil" products are sold at retail for nearly twice as much as that charged for Capatriti).

## Point V

### PLAINTIFFS' REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED

Plaintiffs' last-ditch request for leave to amend should be denied because it is made informally and it is not supported with a proposed amended pleading or any detail about their proposed new pleading. *In re Lehman Bros. Mortgage-Backed Securities*, 650 F.3d 167, 188 (2d Cir. 2011) (citing cases) (finding that a district court correctly denies a request for leave to amend that is made "informally in a brief filed in opposition to a motion to dismiss" or where the plaintiff fails "to offer [a] proposed amended complaint"); *Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 140 (2d Cir. 2011) (finding same).

**CONCLUSION**

For all of the foregoing reasons, and the reasons set forth in Kangadis's opening Memorandum of Law, Kangadis respectfully requests that the Court grant its motion and dismiss the Complaint in its entirety, with prejudice, together with such other and further relief as the Court deems just, equitable and proper.

Dated: May 24, 2013

                                            Respectfully submitted,

                                            FARRELL FRITZ, P.C.
                                            *Attorneys for Defendant*

                                  By: *s/ Michael A.H. Schoenberg*
                                              John P. McEntee
                                              Kevin P. Mulry
                                              Michael A.H. Schoenberg
                                            1320 RXR Plaza
                                            Uniondale, New York 11556
                                            (516) 227-0700

Interwoven\3023495.3