```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JOSEPH EBIN and YERUCHUM JENKINS,    :
                                     :    13 Civ. 2311 (JSR)
     Plaintiffs,                     :
                                     :    MEMORANDUM ORDER
          -v-                        :
                                     :
KANGADIS FOOD INC. d/b/a THE GOURMET :
FACTORY,                             :
                                     :
     Defendant.                      :
------------------------------------x
```



JED S. RAKOFF, U.S.D.J.

Plaintiffs Joseph Ebin and Yeruchum Jenkins bring this putative consumer class action against defendant Kangadis Food Inc., doing business as The Gourmet Factory ("Kangadis"), asserting nine causes of action sounding in fraud, breach of warranty, and unjust enrichment. All of plaintiffs' claims relate to Kangadis's alleged practice of selling containers of Capatriti-brand "100% Pure Olive Oil" that actually contain an industrially processed substance known as "olive-pomace oil," "olive-residue oil," or "Pomace." Now pending before the Court is defendants' motion to dismiss the complaint for failure to state a claim under Rule 12(b)(6) and for lack of subject matter jurisdiction under Rule 12(b)(1). On June 3, 2013, the Court held argument on that motion, at which it ordered jurisdictional discovery, directed the parties to supplemental briefing, and otherwise stayed the case pending resolution of the question of subject matter jurisdiction. For the reasons that follow, the Court finds that it possesses subject matter

jurisdiction over all but one of plaintiffs' claims under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), lifts the stay, and orders further proceedings as set forth herein.

Plaintiffs' complaint alleges subject matter jurisdiction on two grounds: (1) federal question jurisdiction under 28 U.S.C. § 1331 based on plaintiffs' claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., coupled with supplemental jurisdiction over the remaining New York and New Jersey state-law claims, and (2) diversity jurisdiction under CAFA. As to the first ground, section 2310(d)(1)(B) of the MMWA creates a cause of action for breach of warranty, which may be brought "in an appropriate district court of the United States, subject to paragraph (3) of this subsection." Subsection 3, in turn, provides:

> No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection-- (A) if the amount in controversy of any individual claim is less than the sum or value of $25; (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C.A. § 2310(d)(3). At oral argument on June 6, plaintiffs' counsel conceded that plaintiffs cannot meet these jurisdictional requirements. Tr. at 4-5. Accordingly, this Court has jurisdiction, if at all, only under CAFA.

Before turning to whether CAFA's requirements are met, however, the Court must address plaintiffs' contention at oral argument that "CAFA creates an alternative basis for federal jurisdiction over the

2

[MMWA] claim." Id. at 5. In line with that suggestion, plaintiffs' supplemental letter brief continues to cite MMWA cases and to calculate the amount in controversy on the basis of a nationwide class, suggesting that plaintiffs take the position that their MMWA claims are still viable if this Court has jurisdiction under CAFA. That position is incorrect. Indeed, it is flatly contradicted by the plain text of the MMWA. As stated above, the MMWA provides that "[n]o claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection" -- i.e., a suit brought under the MMWA in federal district court -- unless the MMWA's independent jurisdictional requirements are met. Since plaintiffs concededly cannot meet the MMWA's jurisdictional prerequisites, their MMWA is dismissed.

As to plaintiffs' state-law claims, the Court must examine whether there is subject matter jurisdiction under CAFA. CAFA "confer[s] original federal jurisdiction over any class action involving (1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, i.e., where at least one plaintiff and one defendant are citizens of different states." Blockbuster, Inc. v. Galeno, 472 F.3d 53, 56 (2d Cir. 2006). Here, defendant does not contest that this consumer class action involves more than 100 class members, and minimal diversity is satisfied because one of the named plaintiffs is a citizen of New Jersey and defendant is a New York corporation with its principal place of business in New York. See

3

Compl. ¶¶ 9-10. Defendant only contests whether plaintiffs have met CAFA's $5 million amount-in-controversy threshold.

With respect to the amount in controversy, the complaint alleges in conclusory fashion that "the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs." Compl. ¶ 12. At oral argument, plaintiffs' counsel freely acknowledged that this allegation was a mere "educated guess" based on defendant's submissions in the related false advertising action, also pending before this Court, filed by the North American Olive Oil Association. Tr. at 7. Nevertheless, a party invoking federal jurisdiction need only show a "a reasonable probability that the claim is in excess of the statutory jurisdictional amount," and courts "recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003) (internal quotation marks omitted). "To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." Id. (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)).[1]

---

[1] Defendant argues that the alleged amount in controversy in this case is not entitled to the usual presumption of accuracy because plaintiffs conducted no independent investigation into the amount in controversy before filing their complaint. But as explained at the oral argument on July 6, plaintiffs based their amount-in-controversy allegation on documents submitted by the defendant in

4

After jurisdictional discovery, plaintiffs contend that the facts bear out the alleged amount in controversy. Defendant has produced a document showing that from January 2009 through February 2013, defendant received $41.7 million in gross revenue from the product in question, a figure plaintiffs contend actually understates the amount in controversy. Pls.' Letter Br., ex. A. As plaintiffs explain, this figure covers sales from only part of the class period, which extends back to 2007, and also represents only wholesale revenues from sales to middlemen, rather than full retail revenues from sales to end consumers. Plaintiffs contend that the full retail price paid by consumers represents the proper measure of compensatory damages in this case. See, e.g., Suber v. Chrysler Corp., 104 F.3d 578, 589 (3d Cir. 1997).

But even if the measure of damages is not the full retail price, but rather, as defendant has argued, the "benefit of the bargain" -- i.e., the difference in value between what plaintiffs believed they were purchasing and what they actually paid -- plaintiffs contend that they have still cleared CAFA's jurisdictional minimum. Plaintiffs explain that defendant has admitted in the parallel false advertising action that Capatriti and other Pomace products generally sell for between $8.99 and $15.14,

---

the parallel false advertising action, in which defendant represented that it derives gross profits from the product in question of roughly $3 million per year. See Tr. at 6-7. Defendant cites no authority for the remarkable notion that plaintiffs cannot in good faith rely on defendant's own representations to this Court. In any event, as explained below, facts revealed in jurisdictional discovery confirm the accuracy of plaintiffs' allegation.

5

while true olive oil products generally sell for between $19.99 and $29.99. Based on that price difference, plaintiffs contend that even a benefit-of-the-bargain damages theory produces nationwide class damages of between $21.1 million and $91.3 million. Plaintiffs also note that the complaint contains claims for punitive damages, treble damages, and attorneys' fees.

Defendant presses two arguments in response. First, defendant argues that the proper measure of damages is the benefit of the bargain, and not the full retail price paid by plaintiffs. In support of this argument, defendant cites cases resolving claims for common law fraud, violations of New York General Business Law § 349 ("NYGBL"), and violations of the New Jersey Consumer Fraud Act ("NJCFA"). See Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370, 1373 (N.Y. 1996) ("[T]he loss [for fraud] is computed by ascertaining the difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain." (internal quotation marks omitted)); Small v. Lorillard Tobacco Co., Inc., 720 N.E.2d 892, 898 (N.Y. 1999) (dismissing NYGBL claim on the ground that "plaintiffs do not allege that the cost of [the product] was affected by the alleged misrepresentation"); Union Ink Co., Inc. v. AT&T Corp., 801 A.2d 361, 375 (N.J. Super. Ct. App. Div. 2002) ("The measure of damages in a consumer fraud case is the difference between the value of what was promised and what was received, that is, what the customer would have received had the defendants'

6

representations been accurate."). Second, defendant asserts that the assumptions underlying plaintiffs' benefit of the bargain calculations, as well as the claims for punitive damages, treble damages, and attorneys' fees, are conclusory and unfounded.

The Court concludes that plaintiffs have adequately pled damages in excess of CAFA's $5 million minimum, but not for the reasons plaintiffs argue. As an initial matter, defendants persuasively argue that on plaintiffs' common law fraud, NYGBL, and NJCFA claims, the proper measure of damages is the benefit of the bargain. But defendant cites no authority to rebut plaintiffs' contention that they may recover the full retail price paid on their state-law claims for breach of warranty. See Suber, 104 F.3d at 589 n.12 ("[A] consumer who is damaged by the failure of a dealer or manufacturer to comply with a warranty obligation can file suit to recover the purchase price plus collateral damages."); Diaz v. Paragon Motors of Woodside, Inc., 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) ("[A] buyer may obtain a refund of the purchase price from a manufacturer for breach of an express warranty.").[2] The exhibit to

---

[2] Although Suber and Diaz addressed claims under the MMWA, that statute, insofar as relevant here, merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages. See Diaz, 424 F. Supp. 2d at 540 ("The MMWA . . . creates no additional bases for liability, but allows a consumer to recover damages under existing state law . . . ."); see also Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 249 (2d Cir. 1986) (holding that state law governs whether lack of privity is a defense to an MMWA claim). The fact that the Court has dismissed plaintiffs' MMWA claim thus does not diminish these cases' authoritative value on this point.

plaintiffs' letter brief shows that from January 2009 through February 2013, defendants earned roughly $14.7 million in gross revenue from the product in question, a sum that -- even though, for the reasons plaintiffs explain, it understates plaintiffs' full damages -- still easily exceeds CAFA's threshold.

Moreover, even if defendant were correct that the benefit of the bargain is the proper measure of damages for all plaintiffs' claims, that measure would still produce an amount in controversy well over $5 million. That is not to say, however, that plaintiffs' calculation under that theory is correct. Plaintiffs' damages calculation under that theory takes the general price of pure olive oil and subtracts the general price of Pomace; the proper method takes the price plaintiffs actually paid for what they thought was pure olive oil, and then subtracts the general price of the Pomace they actually received. See Lama Holding Co., 668 N.E.2d at 1373 ("[T]he loss [for fraud] is computed by ascertaining the difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain." (internal quotation marks omitted)).

Plaintiffs' complaint helpfully performs this calculation correctly, alleging that defendant charges 16.3 cents per fluid ounce of Pomace, while a competing manufacturer charges 9.8 cents per ounce, producing a premium of 6.5 cents per ounce. Compl. ¶ 6. Based on the document defendant produced in discovery, defendant sold approximately 167 million ounces of Pomace in New York and New

8

Jersey in the last 4 years, which would imply a total price premium of roughly $10.9 million -- well above CAFA's $5 million threshold. Accordingly, even under defendants' theory of damages, the amount in controversy easily clears CAFA's jurisdictional minimum, even without considering plaintiffs' colorable claims for punitive damages, treble damages, and attorneys' fees. See, e.g., Cox v. Sears Roebuck & Co., 647 A.2d 454, 465 (N.J. 1994) ("[A]n award of treble damages and attorneys' fees is mandatory under [the New Jersey Consumer Fraud Act] if a consumer-fraud plaintiff proves both an unlawful practice under the Act and an ascertainable loss.").

Accordingly, for the foregoing reasons, the Court grants defendant's motion to dismiss plaintiffs' MMWA claim for lack of jurisdiction, but denies the motion insofar as it seeks dismissal of plaintiffs' remaining claims for lack of jurisdiction. The Court's previously entered stay of all other proceedings in this case is hereby lifted. Within two business days of the date of this Order, counsel for the parties are directed to jointly telephone Chambers to schedule oral argument on the remaining prongs of defendant's pending motion, and to set a schedule for the remainder of the case.

SO ORDERED.

Dated: New York, NY
July 25, 2013

JED S. RAKOFF, U.S.D.J.