UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JOSEPH EBIN and YERUCHUM JENKINS,    :
                                     :        13 Civ. 2311 (JSR)
        Plaintiffs,                  :
                                     :        MEMORANDUM
        -v-                          :
                                     :
KANGADIS FOOD INC. d/b/a THE GOURMET :
FACTORY,                             :
                                     :
        Defendant.                   :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12-11-13

Plaintiffs Joseph Ebin and Yeruchum Jenkins bring this putative

consumer class action against defendant Kangadis Food Inc., doing

business as The Gourmet Factory ("Kangadis"), asserting nine causes

of action sounding in fraud, breach of warranty, and unjust

enrichment. All of plaintiffs' claims relate to Kangadis's alleged

practice of selling containers of Capatriti-brand "100% Pure Olive

Oil" that actually contain an industrially processed substance known

as "olive-pomace oil," "olive-residue oil," or "Pomace." By

Memorandum Order dated July 25, 2013, the Court dismissed plaintiffs

claims under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2-

31 et seq., for lack of jurisdiction, but found jurisdiction over

the remaining state-law claims under the Class Action Fairness Act

of 2005, 28 U.S.C. § 1332(d). In a following "bottom line" Order

dated September 6, 2013, the Court dismissed all claims for breach

of warranty under New York law, claims for breach of the implied

warranty of fitness for a particular purpose under New Jersey law,

1

and claims for unjust enrichment under both New York and New Jersey law. The remaining claims, for breach of express warranty under New Jersey law, breach of the implied warranty of merchantability under New Jersey law, violation of section 349 of the New York General Business Law, violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq., and negligent misrepresentation and fraud under New York and New Jersey law, survived. This Memorandum states the reasons for the September 6, 2013 Order.

The pertinent allegations of the Complaint are as follows. Kangadis is a food import and distribution company formed in 2003. Complaint ¶ 10. Since 2006, Kangadis has sold, under the brand name Capatriti, a product labeled "100% Pure Olive Oil." *Id.* Plaintiffs allege that the oil contained in Capatriti containers is not in fact olive oil, but a substance called "Pomace" (further described below). Plaintiff Ebin purchased a 101 fluid ounce container of this product at a local grocery store in Bronx County, New York in "late 2012" for "approximate $16.49." *Id.* ¶ 8. Plaintiff Jenkins also purchased a container of Capatriti "100% Pure Olive Oil," though the complaint does not allege in what volume or what price he paid. *Id.* ¶ 9. The two plaintiffs saw the labeling of the product, understood it as a representation that the product consisted of 100% pure olive oil, and would not have consummated their respective purchases if they had known that the product was not 100% pure olive oil. *Id.* ¶¶ 8-9.

2

Plaintiffs further allege that Capatriti "100% Pure Olive Oil" is sold at a premium over competing brands of Pomace. The Complaint includes a chart showing that while Capatriti sells for 16.3 cents per fluid ounce, "Marconi Olive Pomace Oil" sells for just 9.8 cents per fluid ounce. *Id.* ¶ 6. Plaintiffs thus allege that they and the putative class "have been hit with a costly double-whammy: a premium purchase price for a worthless product." *Id.*

The Complaint references an expert report by Professor Lanfranco Conte, commissioned by the North American Olive Oil Association ("NAOOA") as part of a related case, *NAOOA v. Kangadis*, 13 cv. 0868, regarding the chemical properties of the product Kangadis sells as "100% Pure Olive Oil." Conte is a professor at University of Udine, and has extensive experience in analyzing oils, including years of work detecting olive oil fraud for the Italian government. Conte Report, ¶¶ 5-7. To assist Conte, NAOOA retained an independent third party to purchase random samples from three separately numbered lots of Capatriti "100% Pure Olive Oil." Conte then conducted chemical tests on these oils and determined that they had multiple chemical markers that deviated from the defining characteristics of pure olive oil, some by as much as five or six times the established thresholds. Conte Report ¶ 48. Conte concludes that the Capatriti product is not pure olive oil, but is substantially, if not entirely, Pomace or a mixture of Pomace and seeds oil. *Id.* ¶¶ 67-71.

The Conte Report explains that Pomace is fundamentally different from what is commonly known as "olive oil." As Conte explains, what consumers generally know of as "olive oil" comes from olives that are harvested, quickly carried to a mill, washed, crushed, and spun to separate out excess water. Conte Report ¶¶ 9-14. This process is entirely mechanical, and involves no heat or chemicals. *Id* ¶ 12. The product resulting from this process is commonly called "virgin olive oil." *Id*. ¶¶ 15-17. If "virgin olive oil" undergoes refining to remove impurities, then it is no longer called "virgin," but remains "olive oil." Pomace, by contrast, is made from the residue materials left over after all of the olive oil has been mechanically extracted from the flesh of the olives. Leftover skins and olive pits are sent to specialized facilities where they undergo superheating, bleaching, deodorizing, steaming, and treatment with industrial solvents. *Id*. ¶¶ 22, 39-40. To be made fit for human consumption, the resulting liquid must be refined to remove the solvents. *Id*. ¶ 21.

Plaintiffs here allege that no regulatory body or trade organization permits products containing Pomace to be labeled as "olive oil." In a notice declining to adopt an olive oil standard proposed by the Food and Agriculture Organization and the World Health Organization, the FDA explained that under existing standards,

"[t]he name "virgin olive oil" may be used only for the oil resulting from the first pressing of the olives and which

4

is suitable for human consumption without further processing. Oil extracted from olive pomace and pits by chemical means and refined to make it edible must be labeled either "refined olive-residue oil" or "refined extracted olive-residue oil."

Olive Oil; Termination of Consideration of Codex Standard, 47 Fed. Reg. 42, 123 (Sept. 24, 1984). The U.S. Department of Agriculture has similarly adopted voluntary standards under which "[o]live-pomace oils shall not be labeled as 'olive oil.'" 7 C.F.R. § 52.1535.

Likewise under New York law, "olive oil" means oil "obtained solely from the fruit of the olive tree (olea europaea), to the exclusion of oils obtained using solvents or reestrification processes and of any mixture with oils of other kinds." N.Y. Agric. & Mkts. Law § 204-a(1)(a). "Olive-pomace oil," by contrast, is defined as "oil obtained by treating olive pomace with solvents or other physical treatments." *Id.* § 204-a(1)(b). New York law makes it unlawful to sell "any compound or blended oil of any kind which purports to be an olive oil mixture unless the container thereof be permanently and conspicuously labeled 'compound oil' or 'blended oil' with a statement of the different ingredients thereof and the specific percentage of olive oil, the total percentage of other vegetable oils and the specific percentage of each other ingredient comprising more than one-half of one per centum of the mixture." *Id.* § 204-a(1). New York's Commissioner of Agriculture has also

5

independently mandated that the proper label for Pomace is "olive-pomace oil" or "refined olive-pomace oil." N.Y. Comp. Codes R. & Regs. Tit. 1, § 269.1.

Finally, the International Olive Oil Council ("IOC"), a U.N.-created body under whose auspices 98% of the world's olive oil is produced, defines olive oil and Pomace similarly to New York law. The IOC's trade standard prohibits calling an oil containing Pomace "olive oil." IOC Trade Standard Applying to Olive Oils and Olive-Pomace Oils, COI/T.15/NC No 3/Rev.6 § 2.2 (Nov. 2011).

Pomace's different production process makes it significantly cheaper than what is traditionally known as olive oil. The Conte Report represents that Pomace typically sells in bulk quantities for between €1.10 and €1.25 per kilogram. Bulk refined olive oil, however, typically sells for about 50% more, between €1.70 and €2.35 per kilogram. Bulk virgin olive oil is even more expensive. Conte Report ¶ 24.

Against the background of these factual allegations, the following four groups of claims are sufficiently pleaded as to survive defendant's motion to dismiss:

**(1) Breach of express warranty under New Jersey law**

Whether a statement is a "warranty" is a question of fact. *McDonnell Dougals Corp v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997) (Hub, J.) ("whether seller affirmed a fact amounting to an express warranty is a question of fact"). Under New York and New Jersey versions of the Uniform Commercial Code ("UCC"),

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the **goods** shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

N.Y. U.C.C. § 2-313; N.J.S.A. § 12A: 2-313.

Kangadis argues in its motion to dismiss that its label of its product as "100% Pure Olive Oil" is not a warranty but rather a mere "product description." Indeed, several courts have ruled that similar descriptions are not actionable warranties because they do not guarantee a level of performance over a specified period of time. *See, e.g., Ivie v. Kraft Foods Global, Inc.*, C-12-02554-RMW, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ("Food labels, such as those at issue here, do not constitute warranties against a product defect. They are 'product descriptions' rather than promises that the products are defect-free, or guarantees of specific performance levels over a specified period of time.") (internal citations, quotations, and alterations omitted." Kangadis claims the same is true here - that "100% Pure Olive Oil" constitutes a mere product description without any associated warranties with guaranteed performance levels and timelines.

However, plaintiffs argue convincingly that, contrary to Kangadis's suggestion, the label does in fact implicitly guarantee a

level of performance over a specified period of time. As to performance, the label suggests that the product is "100% pure." As to the period of time, plaintiffs contend the relevant time period ends at the product's "Best by" date." Additionally, the cases cited by Kangadis are distinguishable: those cases hold that "all natural" ice cream containing synthetic elements still remains ice cream in the manner that impure olive oil fundamentally remains olive oil. Here in contrast, one item, Pomace is being represented as something that allegedly is entirely different, olive oil. This Court concludes that plaintiffs have adequately pled that Kangadis's "100 Pure Olive Oil" label constitutes a verifiable affirmation of fact -- namely that Kangadis's product is "100% Pure Olive Oil," -- and thus is a written warranty sufficient to survive a motion to dismiss.

## (2) Breach of implied warranty of merchantability under New Jersey law

"The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in trade without objection." *Marache v. Akzo Nobel Coatings, Inc.*, 08 civ 11049 SHS/AJ, 2010 WL 908467 (S.D.N.Y. Mar. 12, 2010). Here, every relevant labeling standard described above, such as that of the International Olive Council and the U.S. Department of Agriculture, regard products sold in the manner of the defendant's product as mislabeled. *See, e.g.* IOC Trade Standard Applying to Olive Oils and Olive-Pomace Oils,

COI/T.15/NC No 3/Rev.6 § 2.2 (Nov. 2011); 7 C.F.R. § 52.1535.
Plaintiffs have thus adequately pled that Kangadis's label breaches
the implied warranty of merchantability under New Jersey law.

**(3) Violation of § 349 of the New York General Business Law and
New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.***

New York General Business Law § 349 and the New Jersey Consumer
Fraud act both prohibit deceptive acts and practices aimed at
consumers. *See, e.g.*, N.Y. GBS. Law § 349 ("Deceptive acts or
practices in the conduct of any business, trade or commerce or in
the furnishing of any service in this state are hereby declared
unlawful.").

Kangadis argues in its motion to dismiss that plaintiffs fail
to state a claim under either of these statutes because they fail to
adequately allege actual injury. As to the New York General
Business Law claim, Kangadis argues that deception alone is not a
cognizable injury. *See Small v. Lorillard Tobacco Co., Inc.*, 94
N.Y.2d 43, 56, 720 N.E. 2d 892 (1999) ("Plaintiffs' cause of action
under this statute, as redefined by the trial court and as embraced
by them, thus sets forth deception as both act and injury.").

As for the New Jersey Consumer Fraud Act claim, Kangadis
contends that plaintiffs have failed to plausibly allege damages.
While acknowledging that plaintiffs allege that they paid a "price
premium" for Kangadis's mislabeled Pomace, and that the complaint
includes a chart comparing the price paid by plaintiff Ebin to the
lower price available from a competing brand of Pomace, Kangadis

9

nevertheless maintains that the allegation of a "price premium" is impermissibly conclusory. Kangadis also cites its own 52-week price survey, not referenced in the complaint, which allegedly shows that the price of "100% Pure Olive Oil" is less than the price of "most" Pomace products."

Plaintiffs contend, and the Court accepts, that for the purposes of the New York General Business Law, deception and injury have been separately pled. The deception is the false and misleading label, and the injury is the purchase price. Indeed the very case Kangadis cites recognizes that this is a permissible way to plead a New York General Business Law claim. *Small*, 94 N.Y.2d at 56 n.5 ("[P]laintiff might have a claim where a distributor asserts that its bottled water is from a pure and pristine mountain stream while in reality, it was only tap water.").

With regards to damages in the New Jersey Consumer Fraud Act, Kangadis's appeal to its own price chart contravenes the rule that "in deciding a motion to dismiss, the Court must limit its analysis to the four corners of the complaint," except that it "may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference." *Hsueh v. The Bank of New York*, 05 Civ 5345 JSR, 2006 WL 2778858 (S.D.N.Y. Sept. 26, 2006) (internal citation and quotation marks omitted). Thus the Court finds that plaintiffs have adequately pled a violation of both New York General Business Law § 349 and the New Jersey Consumer Fraud to survive Kangadis's motion to dismiss.

**(4)  Negligent misrepresentation and fraud under New York and New Jersey law**

To comply with state law, a plaintiff asserting claims sounding in fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).

Kangadis contends in its motion to dismiss that plaintiffs have failed to meet this standard here for several reasons.  First, Kangadis contends that plaintiffs allegations as to where and when the false statement took place are impermissibly vague – the complaint merely alleges that Ebin and Jenkins purchased Capatriti products in "late 2012" or "early 2013" from a "local grocery store."  Second, Kangadis contends that plaintiffs' allegations of injury are also impermissibly vague.  Finally, Kangadis asserts that plaintiffs have failed to plead facts leading to a "strong inference of fraudulent intent." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 2995).

However, the Court finds that the Complaint fully specifies who made the false statement (here, Kangadis), what the false statement was (the labeling describing the product as "100% Pure Olive Oil"), when the statement was made (in late 2012 or early 2013), where the statement was made (on the Capatriti containers plaintiffs purchased

11

from the local grocery store), and how that statement was false (the product was Pomace rather than pure olive oil). *See U.S. ex. Rel. Polansky v. Pfizer, Inc.* 04-CV-0704 (ERK), 2009 WL 145682 (E.D.N.Y. May 22, 2009) ("Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud.").

Rule 9(b) allows a defendant's state of mind to be alleged "generally," but even to the extent that facts showing a "strong inference of fraudulent intent" are required, they are more than adequately pled here. Specifically, the complaint alleges (1) that Kangadis's labeling practices violate every applicable labeling standard, of which any commercial producer would be aware, and (2) that in 2009, a Vice President of Kangadis tried and failed to prevent the state of Connecticut from banning olive oil that does not comply with the IOC standards, thereby showing that Kangadis was at the time aware of those standards. Compl. ¶ 12. Thus, plaintiffs have adequately pled claims for fraud and negligent misrepresentation.

By contrast with the adequately pleaded claims described above, the following three groups of claims were dismissed by the September 6, 2013 Order, for the following reasons:

## (1) Breach of warranty under New York law

The Court dismissed all of plaintiff's New York breach of warranty claims, express and implied, for failure to plead privity or agency. Under New York law, "[p]rivity is normally an essential element of a cause of action for express warranty." *DiBartolo v.*

12

*Abbott Laboratories*, 12 Civ. 900 NRB, 2012 WL 6681704 (S.D.N.Y. Dec. 21, 2012). A claim based "upon a breach of an implied warranty" also "requires a showing of privity between the manufacturer and the plaintiff." *Bristol Village, Inc. v. Louisiana-Pacific Corp.*, 2012 U.S. Dist. LEXIS 183342 (W.D.N.Y. 2012). However, "the U.C.C. includes a personal injury exception." *Id.* While in New Jersey, "the absence of privity "no longer bars a buyer from reaching through the chain of distribution to the manufacturer," New York maintains the requirement of privity. *Paramount Aviation Corp v. Agusta*, 288 F.3d 67, 71 (3d Cir. 2002). Here, because no personal injury is alleged, privity is thus is required to assert a breach of warranty claim under New York law. Plaintiffs have not alleged that they were in privity with Kangadis and thus any breach of warranty under New York law must fail.

Plaintiffs contend that Kangadis's privity argument misses the mark for three reasons relevant to New York breach of warranty law. Plaintiffs contend that in New York, privity is no longer required as a result of Judge Fuld's decision in *Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 11 N.Y.2d 5, 8, 181 N.E.2d 399 (1962). However, plaintiffs neglect to mention that *Randy Knitwear* preceded the enactment of the UCC, which displaced it. Second, plaintiffs contend that privity is not required for cases involving sealed foodstuffs. However, plaintiffs again cite pre-UCC cases. *See, e.g., Rachlin v. Libby-Owens-Ford Glass Co.*, 96 F.2d 597, 600 (2d Cir. 1938). Finally, plaintiffs contend that privity is not required where the

final retailer is an agent of the manufacturer. However this assertion of an agency relationship is not adequately pleaded in the Complaint in any way sufficient to survive dismissal.

## (2) Breach of implied warranty of fitness for a particular purpose under New Jersey law

The Court also dismissed plaintiff's action for breach of implied warranty for a particular purpose under New Jersey law. The Complaint does not spell out the purpose of plaintiff's purchase of the Kangadis product. Kangadis asserts convincingly that plaintiffs do not allege that they ever tried to consume or use Kangadis's product for any purpose, much less that it failed in that purpose or caused any ill effect. To the extent that the purpose was human consumption, then plaintiffs have conceded that "100% Pure Olive Oil" is fit for that purpose. *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 79, 786 (N.Y.S.2d 153 (2004) ("The claim for breach of implied warranty was also properly dismissed on the ground that these merchantable beverages caused no ill effects."). To the extent that the purpose was something more specific that implicates the oil's taste or smoke point, allegations supporting a claim on that theory, while arguably present in sources outside the complaint, are entirely absent from the complaint.

## (3) Unjust enrichment under New York and New Jersey law

The Court dismissed plaintiff's action for unjust enrichment under both New York and New Jersey law. Unjust enrichment is an "equitable remedy" that "prevents one party from retaining, at the

expense of another, a benefit to which he is not entitled." *United States v. Bedford Associates*, 713 F.2d 895, 901 (2d Cir. 1983). However, an unjust enrichment claim will not lie "where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 967 N.E. 2d 1177 (N.Y. 2012). Here, the Court finds that plaintiffs have failed to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.

Accordingly, for the foregoing reasons, the Court by Order dated September 6, 2013, granted defendant's motion to dismiss in part and denied it in part.

SO ORDERED.

Dated:  New York, NY
        December 7, 2013         JED S. RAKOFF, U.S.D.J.