```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
JOSEPH EBIN, YERUCHUM JENKINS, et al.:
                                        :      13 Civ. 2311 (JSR)
        Plaintiffs,                     :
                                        :      MEMORANDUM ORDER
        -v-                             :
                                        :
KANGADIS FOOD INC. d/b/a THE GOURMET    :
FACTORY,                                :
                                        :
        Defendant.                      :
----------------------------------------x
```



JED S. RAKOFF, U.S.D.J.

Lead plaintiffs Joseph Ebin and Yeruchum Jenkins bring this consumer class action against defendant Kangadis Food Inc., doing business as The Gourmet Factory ("Kangadis"), asserting numerous causes of action for breach of express warranty and breach of the implied warranty of merchantability under New Jersey law, violation of the New Jersey Consumer Fraud Act ("NJCFA"), violation of the New York General Business Law ("NYGBL") § 349, and fraud and negligent representation under New York and New Jersey law. All of plaintiffs' claims relate to Kangadis's alleged practice of selling containers of Capatriti-brand "100% Pure Olive Oil" that actually contain an industrially processed substance known as "olive-pomace oil," "olive-residue oil," or "pomace." Defendant moves for summary judgment.

The pertinent facts, undisputed unless otherwise noted, are as follows. In the production of olive oil, mechanical and physical methods, otherwise known as pressing, are used to extract virgin

olive oil from harvested olives. Defendant's Rule 56.1 Statement ("D.'s 56.1") ¶ 2; Plaintiff's Response to Defendant's Rule 56.1 Statement ("P.'s 56.1") ¶ 2. After removing the virgin olive oil from the olive through mechanical extraction, the remaining products from the olive are called "pomace." D.'s 56.1 ¶ 3; P.'s 56.1 ¶ 3. To extract any remaining oil from pomace, it is treated chemically with solvents and heated at a high temperature, and the resulting product is known as olive-pomace oil. D.'s 56.1 ¶ 5; P.'s 56.1 ¶ 5. Capatriti contains olive-pomace oil. D.'s 56.1 ¶ 17; P.'s 56.1 ¶ 17.

In addition to the production process, olive oil and pomace oil differ in other ways. Olive oil has an olive flavor but pomace oil is, "for the most part," tasteless. P.'s 56.1 ¶¶ 6-7; Defendant's Response to Plaintiff's Response to Defendant's Rule 56.1 Statement ("D.'s Response 56.1") ¶¶ 6-7. As a matter of chemistry, pomace oil is different from olive oil in that pomace oil is, amongst other properties, higher in trans fats and lower in antioxidants. P.'s 56.1 ¶ 12; D.'s Response 56.1 ¶ 12. Finally, many state, federal, and industry labeling standards, though not binding, distinguish between olive oil and pomace. P.'s 56.1 ¶ 13; D.'s Response 56.1 ¶ 13.

Throughout the class period, Capatriti labeled their product not as pomace but as "100% Pure Olive Oil." P.'s 56.1 ¶ 15; D.'s Response 56.1 ¶ 15. The report of damages expert Colin Weir details several models for calculating damages for this alleged misrepresentation, based on three relevant numbers: the average

2

price of 100% pure olive oil, the average price of pomace advertised as such (non-Capatriti), and the average price of Capatriti. Declaration of Colin B. Weir dated 08/26/13 ("Weir Decl.") at 4-6. Full compensatory damages takes the average purchase price of Capatriti multiplied by the quantity sold to determine damages. *Id*. The "Benefit of the Bargain" model calculates damages based on the cash difference between the price of the product that was advertised, here 100% pure olive oil, and what was received, here the price of pomace that should have been advertised as pomace. *Id*. The "Price Premium" model calculates damages as the difference between what was paid, here the price of Capatrti, and what was received, here the price of pomace which should have been advertised as pomace. *Id*.[1]

Defendant now moves for summary judgment under three theories. First, defendant again propounds the argument, previously rejected by this Court, that Capatriti olive-pomace oil *is*, as a matter of law, olive oil. Second, defendant argues that plaintiffs cannot

---

[1] Different damages calculations are legally required by the surviving claims. For breach of express warranty under New Jersey law, breach of implied warranty of merchantability under New Jersey law, violation of the NJCFA, and fraud and negligent representation under New Jersey law, the Supreme Court of New Jersey has stated that the appropriate damages calculation is the Benefit of the Bargain calculation: "the remedy for a buyer who has accepted defective goods is the difference between the 'value of the goods accepted and the value they would have had if they had been as warranted . . . .'" *Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 441-42 (N.J. 2004); *see also Union Ink Co., Inc. v. AT&T Corp.*, 801 A.2d 361, 375 (N.J. Super. Ct. App. Div. 2002) ("The measure of damages in a consumer fraud case is the difference between the value of what was promised and what was received."). For the fraud and negligent representation claim under New York law and the NYGBL § 349 claim, actual damages are computed, according to the New York Court of Appeals, via the Price Premium model: by "ascertaining the difference between value of the bargain which plaintiff was induced by fraud to make and amount or value of consideration exacted as price of the bargain." *Lama Holding Co. v. Smith Barney Inc.* 668 N.E.2d 1370, 1373 (N.Y. 1996).

3

prevail on a breach of express warranty claim because pre-litigation notice of a breach is a condition precedent to bringing such a claim and no such notice was provided. Finally, defendant contends that Kangadis is entitled to summary judgment because plaintiffs have provided no admissible proof of actual damages, ascertainable loss, or injury.

As to the first argument, there exists more than sufficient evidence for a trier of fact to determine that Capatriti is not 100% pure olive oil. Capatriti has more trans-fats and fewer antioxidants than virgin olive oil, is tasteless, is made from the seed and skin rather than the flesh of the olive, and undergoes chemical treatment with solvents, rather than a purely mechanical extraction process. Additionally, as the Court has previously held, numerous industry standards and the like distinguish pomace oil from olive oil. Finally, the question of whether pomace oil is viewed by consumers as the same as 100% pure olive oil is a factual question.

As to the second argument, defendant's legal contention is wrong. Under New Jersey law, with regard to a claim for breach of warranty, a plaintiff "need not give notice of the breach against a manufacturer who was not the immediate seller of the product." *Elias v. Ungar's Food Prods, Inc.*, 252 F.R.D. 233, 251 (D.N.J. 2008) Moreover, a "civil complaint would satisfy such a notice requirement under N.J.S.A. 2-607(3)(a)." *Id.*

As to the final argument regarding damages, New York and New Jersey law squarely place the burden of ascertaining the amount of

4

damages, when the existence of damage is known but its extent is opaque, upon the alleged wrongdoer, here Kangadis. *See, e.g., Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926-27 (2d Cir. 1977) ("[U]nder long-standing New York rule, when the existence of damage is certain, and the only uncertainty is as to its amount, the plaintiff will not be denied a recovery of substantial damages. Moreover, the burden of uncertainty as to the amount of damage is upon the wrongdoer, and the test for admissibility of evidence concerning prospective damages is whether the evidence has any tendency to show their probable amount."); *Patel v. Soriano*, 848 A.2d 803, 840 (App. Div. 2004) ("Mere uncertainty as to damages will not preclude recovery as long as a wrong has been committed and damages have resulted.").

Here, plaintiffs have provided evidence sufficient to meet their part of this bifurcated burden. Plaintiffs have provided in the report of their expert, Colin Weir, an estimate of the average price per ounce of Capatriti, as well as the number of ounces sold. *See* Weir Decl. at 5. Additionally, plaintiffs have provided admissible raw data, such as the Wakefern data included in Weir's original report, related to the price of virgin olive oil and Pomace oil. Weir Decl., Exhibits ("Ex.") 2-3. Although plaintiffs do not provide definitive figures as to the average price of virgin olive oil or the average price of pomace oil advertised appropriately as such, the burden associated with uncertainty as to the damages

figure falls on the defendant and alleged wrongdoer, not on the plaintiffs.

For the above reasons, defendant's motion for summary judgment is hereby denied. The Clerk of the Court is ordered to close docket number 78 in this case.

SO ORDERED.

Dated:  New York, NY
        February 24 2013

JED S. RAKOFF, U.S.D.J.